## Nos. 23-35560 and 23-35585

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,

*Plaintiff-Appellant/Cross-Appellee*,

v.

MYRON KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington, AKA Mike Kreidler; JAY ROBERT INSLEE, in his official capacity as Governor of the State of Washington,

*Defendants-Appellees/Cross-Appellants*.

On Appeal from the United States District Court
for the Western District of Washington, No. C19-5181 BHS
Honorable Benjamin H. Settle

**BRIEF OF THE ROBERTSON CENTER
FOR CONSTITUTIONAL LAW
AS *AMICUS CURIAE*
IN SUPPORT OF APPELLANT/CROSS-APPELLEE,
CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON**

Christopher T. Holinger
 Of Counsel for *Amicus Curiae*
*Robertson Center for Constitutional Law*
REGENT UNIVERSITY SCHOOL OF LAW
1000 Regent University Dr., Ste. 303
Virginia Beach, VA 23464
Tel. (757) 697-0774
Chriho3@regent.edu

## CORPORATE DISCLOSURE STATEMENT

The Robertson Center for Constitutional Law is an academic center within Regent University School of Law, which has no parent corporation and issues no stock. Accordingly, no publicly held corporation owns ten percent or more of its stock.


s/Christopher T. Holinger
Christopher T. Holinger, Esq.

# TABLE OF CONTENTS

Table of Authorities ................................................................ iii

Interest of Amicus ................................................................ 1

Introduction ................................................................ 2

Summary of the Argument ................................................................ 2

Argument ................................................................ 4

    I.   FULTON STRENGTHENED SMITH'S PROTECTION OF FREE
        EXERCISE. ................................................................ 4

    II.  THE ABORTION COVERAGE MANDATE IS NOT GENERALLY
         APPLICABLE ................................................................ 6

        A. Washington's Statutory Scheme Allows Secular And
           Religious Activity That Undermines The State's Interest. ........ 7

        B. The Abortion Coverage Mandate Allows Individualized
           Exemptions. ................................................................ 12

    III. THE LAW OF THE CASE DOES NOT FORECLOSE REVIEW OF
          CATEGORICAL EXEMPTIONS ................................................................ 15

        A. The Question Of Whether Activities Are Comparable Is
           Different From The Question Of Whether Actors Are
           Similarly Situated. ................................................................ 16

        B. The District Court Should Not Have Applied The Law Of
           The Case And The Rule of Mandate. ................................................................ 19

Conclusion ................................................................ 21

# TABLE OF AUTHORITIES

**<u>Page(s)</u>**

## <u>Cases</u>

*Bowen v. Roy*,
476 U.S. 693 (1986). ............................................................................ 15

*Calvary Chapel Dayton Valley v. Sisolak*,
140 S. Ct. 2603 (2020). ........................................................................ 22

*Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*,
No. C19-5181 BHS, 2023 WL 4743364 (W.D. Wash. July 25, 2023). .......... 7, 16, 18

*Cedar Park Assembly of God v. Kreidler (Cedar Park I)*,
860 F. App'x 542 (9th Cir. 2021)......................................................... 21, 24

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993). ............................................................................ 14

*Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985). ............................................................................ 21

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*,
494 U.S. 872 (1990). .................................................................... 3, 9, 15

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*,
82 F.4th 664 (9th Cir. 2023) (en banc). ...........................................passim

*Fowler v. State of R.I.*,
345 U.S. 67 (1953). ............................................................................ 10

*Fulton v. City of Philadelphia*,
141 S. Ct. 1868 (2021). ...................................................................passim

*Herrington v. Cnty. of Sonoma*,
12 F.3d 901 (9th Cir. 1993). ...................................................... 18, 19, 25

*Liberty Mutual Ins. Co. v. E.E.O.C.*,
691 F.2d 438 (9th Cir.1982). .............................................................. 19

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
902 F.2d 703 (9th Cir. 1990). ............................................................. 19

# TABLE OF AUTHORITIES

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
   141 S. Ct. 63 (2020) (per curiam)................................................. 9, 10, 23

*Ross v. Moffitt,*
   417 U.S. 600 (1974). .............................................................. 21

*Tandon v. Newsom,*
   141 S. Ct. 1294 (2021). ........................................................passim

*Thornton v. City of St. Helens,*
   425 F.3d 1158 (9th Cir. 2005). ................................................... 20

*Tingley v. Ferguson,*
   47 F.4th 1055 (9th Cir. 2022). ..................................................... 8

*United States v. Cote,*
   51 F.3d 178 (9th Cir. 1995), *as amended on denial of reh'g* (June 2, 1995). ......... 24

*United States v. Perez,*
   475 F.3d 1110 (9th Cir. 2007). .................................................... 20

## Statutes

2018 Wash. Sess. Laws, ch. 119. ..................................................... 9

Wash. Rev. Code § 48.43.065. ................................................ 10, 11, 13, 14

Wash. Admin. Code § 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. ................................................... 13

Wash. Rev. Code § 48.43.005. ....................................................... 9

Wash. Rev. Code § 48.43.073. ....................................................... 9

## Other Authorities

Bradley J. Lingo & Michael G. Schietzelt, *A Second-Class First Amendment Right? Text, Structure, History, and Free Exercise After* Fulton, 57 Wake Forest L. Rev. 711 (2022). ...................................................... 1, 4

Bradley J. Lingo & Michael G. Schietzelt, Fulton *and the Future of Free Exercise*, 33 Regent Univ. L. Rev. 5 (2020). ...................................... 1

iv

# TABLE OF AUTHORITIES

Douglas Laycock, *The Broader Implications of* Masterpiece Cakeshop, 2109
    B.Y.U. L. Rev. 167 (2019). .......................................................................... 5

## INTEREST OF AMICUS

The Robertson Center for Constitutional Law is an academic center within the Regent University School of Law.  Established in 2020, the Center pairs advocacy and scholarship to advance first principles in Constitutional Law, including separation of powers, religious liberty, and the rule of law.  The Center has recently done significant academic work on Free Exercise issues, including *A Second-Class First Amendment Right? Text, Structure, History, and Free Exercise After* Fulton[1] and Fulton *and the Future of Free Exercise*.[2]  The Center has represented numerous religious groups before this Court and others in matters concerning religious freedom and rights of conscience.[3]

---

[1]Bradley J. Lingo & Michael G. Schietzelt, *A Second-Class First Amendment Right? Text, Structure, History, and Free Exercise After* Fulton, 57 Wake Forest L. Rev. 711 (2022).

[2]Bradley J. Lingo & Michael G. Schietzelt, Fulton *and the Future of Free Exercise*, 33 Regent Univ. L. Rev. 5 (2020).

[3]No party's counsel authored this brief in whole or in part. No party, party's counsel, or other person or entity (other than amicus and its counsel) contributed money intended to fund the preparation or submission of this brief. All parties have consented to this filing.

## INTRODUCTION

Cedar Park Assembly of God of Kirkland, Washington is a Christian Church that holds deeply to the conviction that abortion in any form is a grave sin. Accordingly, it cannot in good conscience provide coverage for abortion or abortifacient contraceptives in its health insurance plan.

But Washington Senate Bill 6219 ("the abortion coverage mandate") requires coverage for abortion in any plan that provides maternity services. This mandate burdens Cedar Park's free exercise. But the district court refused Cedar Park any relief. That court wrongly concluded that Washington's mandate was neutral and generally applicable. Accordingly, it subjected the mandate only to rational basis review. This Court should reverse that decision.

## SUMMARY OF THE ARGUMENT

The United States Supreme Court, in its decisions *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021), and *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021), has strengthened the protections of the Free Exercise Clause and narrowed the understanding of *Employment Division, Depart of Human Resources of Oregon v. Smith*, 494 U.S. 872

2

(1990). Even more recently, this Court, sitting en banc in *Fellowship of Christian Athletes v. San Jose Unified School District*, applied those decisions to strengthen Free Exercise protections in this circuit. 82 F.4th 664, 686 (9th Cir. 2023) (en banc). Now, strict scrutiny must be applied whenever a statute favors secular activity over comparable religious activity or includes any mechanism for exemptions.

Washington's abortion coverage mandate offers exemptions for some secular activities, but not for comparable religious activities that impact the State's interest in the same way. Washington's statutory scheme that implements the abortion coverage mandate also allows certain individualized exemptions. That fact alone destroys any claims that the law is generally applicable. And it does so regardless of whether any exemptions have ever been given. Because Washington's abortion coverage mandate treats religious activity less favorably than comparable secular activity, the law is not generally applicable and should be subject to strict scrutiny.

The district court erred when it applied the law of the case and the rule of mandate in its decision. The question before the district court was whether Cedar Park's action of refusing to pay for abortion coverage as

part of its employees' health insurance plan has a comparable impact on the State's interest as the actions of other organizations who also refuse to pay for abortion coverage. That question, which is crucial to resolving Cedar Park's Free Exercise claim, is wholly different from the question of whether Cedar Park is similarly situated to other entities exempted from the abortion coverage mandate, for the purposes of an Equal Protection claim. In its prior decision this Court evaluated only the Equal Protection question, so that decision did not preclude a complete evaluation of the Free Exercise claim.

## ARGUMENT

### I. *FULTON* STRENGTHENED *SMITH'S* PROTECTION OF FREE EXERCISE.

In *Fulton*, the Supreme Court expanded *Smith*'s protective rule. That is, rather than overturn *Smith*, the Court gave new teeth to *Smith*'s requirement of general applicability. After *Fulton*, a law is not generally applicable if it contains any "formal mechanism for granting exceptions." *Fulton*, 141 S. Ct. at 1879. Around the same time, *Tandon* elevated religion to what some scholars have deemed "most-favored-nation status," meaning that government cannot "treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at

1296; *see generally* Lingo, *A Second-Class First Amendment Right?*, *supra*.

In *Fulton*, a "formal mechanism for granting exceptions" torpedoed the City's claims regarding general applicability. *Fulton*, 141 S. Ct. at 1879.[4] According to the Court, the mechanism and the discretion it afforded the Commissioner invited "the government to decide which reasons for not complying with the policy are worthy of solicitude." *Id.* And the fact that the Commissioner had never granted an exemption? Unimportant. The exemption mechanism's mere existence triggered *Smith*'s protective rule. *Id.*

Moreover, under *Tandon*, statutes fail general applicability "whenever they treat *any* comparable secular activity more favorably than religious exercise." 141 S. Ct. at 1296. In other words, if a statute grants *any* exemptions to comparable secular conduct, it must also grant

---

[4]In *Fulton*, five Justices signaled their readiness to overrule *Smith*. Justices Alito, Gorsuch, and Thomas say the Court "should have done so" in *Fulton*. 141 S. Ct. at 1931 (Gorsuch, J., concurring); *see also id.* at 1883 (Alito, J., concurring) ("This severe holding is ripe for reexamination."). Justices Kavanaugh and Barrett stand ready to overrule *Smith* once they understand what better standard should replace it. *Id.* at 1882 (Barrett, J., concurring).

those exemptions to religious conduct. And, if "a law with even a few secular exceptions isn't neutral and generally applicable, then not many laws are." Douglas Laycock, *The Broader Implications of* Masterpiece Cakeshop, 2109 B.Y.U. L. Rev. 167, 173 (2019). The upshot of these decisions is that regulations that burden religion must pass strict scrutiny *unless* they grant no exemptions and provide no authority for a government administrator to grant exemptions.

## II. THE ABORTION COVERAGE MANDATE IS NOT GENERALLY APPLICABLE.

This Court must apply strict scrutiny when a law burdening free exercise is not neutral and generally applicable. *Fulton*, 141 S. Ct. at 1877; *Tandon*, 141 S. Ct. at 1296. As the district court recognized, the law at issue burdens Cedar Park's free exercise. *Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*, No. C19-5181 BHS, 2023 WL 4743364, at *6 (W.D. Wash. July 25, 2023) ("SB 6219, under certain circumstances, could burden [Cedar Park's] religion."). So, the law must meet strict scrutiny unless it is both neutral and generally applicable.

A law may fail to be generally applicable for two distinct reasons. *See Tingley v. Ferguson*, 47 F.4th 1055, 1088 (9th Cir. 2022). First, it can be underinclusive in its scope: "A law . . . lacks general applicability if it

prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877. This underinclusion embraces situations in which a law "treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296. Second, a law is not generally applicable if it provides a "mechanism for individualized exemptions." *Fulton*, 141 S. Ct. at 1877 (quoting *Smith*, 494 U.S. at 884). The abortion coverage mandate satisfies neither requirement.

## A. Washington's Statutory Scheme Allows Secular And Religious Activity That Undermines The State's Interest.

"[T]he government may not 'treat . . . comparable secular activity more favorably than religious exercise.'" *Fellowship of Christian Athletes,* 82 F.4th at 686 (quoting *Tandon*, 141 S. Ct. at 1296). To assess "whether two activities are comparable for purposes of the Free Exercise Clause," the actions, not the actors, "must be judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 141 S. Ct. at 1296. This principle is well illustrated in recent cases challenging COVID-19 regulations.

During the COVID-19 pandemic, governments at all levels justified restricting public gatherings based on their interest in "[s]temming the

spread of COVID-19." *Roman Cath. Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63, 66 (2020) (per curiam). In this context, the Court evaluated "[c]omparability" and analyzed "the risks various activities pose, not the reasons why people gather[ed]." *Tandon*, 141 S. Ct. at 1296. Applying this standard, the Court found that people gathering for religious services and those gathering to shop in large retail stores had a comparable impact on the asserted governmental interest. It held that the COVID regulations were not generally applicable when the State of New York imposed greater burdens on religious activity (gathering for services) than on comparable secular activity (shopping). *Roman Cath. Diocese*, 141 S. Ct. at 67.

This principle also applies to comparable activity undertaken by different religious groups. The government must extend protections it affords to one religious group to all religious expression. *Fowler v. State of R.I.*, 345 U.S. 67, 69 (1953) (holding that allowing one religious group to have services on public land but not Jehovah's Witnesses "amounts to the state preferring some religious groups over [others]" and violates the First Amendment).

The State's purported interest furthered by the abortion coverage mandate is to ensure that "all Washingtonians" have "[a]ccess to the full range of health benefits and preventative services," including abortion, which the State considers "an essential part of primary care for women and teens." 2018 Wash. Sess. Laws, ch. 119, § 1. In short, Washington's interest is to ensure that all residents with health insurance plans have access to abortion coverage. But the statute and its implementing regulations leave room for various activities that undermine that interest.

### 1. Secular Activity

The abortion coverage mandate applies only to "health plan[s]" that offer maternity care. Wash. Rev. Code. § 48.43.073. The definition of a "health plan" is purely statutory, and not every policy that provides for medical care qualifies as a "health plan." *See* Wash. Rev. Code. §§ 48.43.005(31). Some insurance plans not defined by statute as a "health plan" could include maternity care if the policy purchaser asks for it to be included. But because they fall outside the statutory definition of a "health plan," these policies are exempt from the abortion coverage mandate. *Id.* §§ 48.43.005(31)(d), (j), (l); *see also* Doc. 103 at 20 & n.6.

9

Some examples of plans that fall under this exemption include short-term and limited-purpose healthcare plans and employer self-funded plans. Regardless of whether these plans omit abortion coverage for religious reasons or some other reason, the abortion coverage mandate does not include them.

The mandate also allows some health insurance plans to omit abortion coverage when necessary to ensure access to federal funding (*e.g.*, to comply with the Weldon Amendment). Washington is not obligated to receive federal health funding. But this exemption shows that Washington's interest in "all Washingtonians" receiving abortion insurance coverage bows to the State's interest in receiving federal healthcare dollars.

### 2. *Religious Exemptions*

Similarly, Washington's broader health insurance statutory scheme contains a provision that allows for some religious and conscientious objections. Wash. Rev. Code § 48.43.065. To comply with this provision, the Insurance Commissioner has interpreted the statutory scheme to allow some entities that oppose abortion on religious grounds to omit the required coverage from their plans. But not all religious

entities that provide insurance may take advantage of this exemption. While religiously sponsored health insurance carriers and health care facilities may omit abortion coverage from their plans under Washington Revised Code section 48.43.065(2), churches like Cedar Park may not.[5]

The abortion coverage mandate exempts some types of plans (for both religious and non-religious reasons), and it exempts some actors (*e.g.*, religious health insurance carriers and providers). But Washington refuses to provide a similar exemption for churches like Cedar Park. This is precisely the kind of treatment prohibited by this Court's decision in *Fellowship of Christian Athletes*, 82 F.4th at 686 ("[T]he government may not treat . . . comparable . . . activity more favorably than religious exercise." (quotations omitted)), and by the Supreme Court in *Tandon* and *Roman Catholic Diocese*.

By exempting these categories of activities, Washington has made the abortion coverage mandate "underinclusive." *See Church of Lukumi*

---

[5]Appellees alleged in the district court that Cedar Park could have taken advantage of this provision of the law, but their insurance company refused to accommodate them. Regardless of how this provision might have applied to Cedar Park, its existence destroys the law's general applicability.

*Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993). Thus, by design, the abortion coverage mandate does not apply to all comparable activities that undermine Washington's interest. This underinclusion is the "precise evil" that "the requirement of general applicability is designed to prevent." *Id.* at 546.

### B. The Abortion Coverage Mandate Allows Individualized Exemptions.

"A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fellowship of Christian Athletes*, 82 F.4th at 687 (quoting *Fulton*, 141 S. Ct. at 1882). And when there is a system for personal exemptions in place—either at the discretion of an official or for "good cause"—then "the [state] 'may not refuse to extend that [exemption] system to cases of religious hardship without compelling reason.'" *Fulton*, 141 S. Ct. at 1878 (quoting *Smith*, 494 U.S. at 884); *Bowen v. Roy*, 476 U.S. 693, 708 (1986) ("The 'good cause' standard created a mechanism for individualized exemptions. If a state creates such a mechanism, its refusal to extend an exemption to an instance of religious hardship suggests a discriminatory intent."). The mere existence of such an exemption mechanism—regardless of whether

12

the government has issued any exemptions—is enough to render a law not generally applicable. *Fulton*, 141 S. Ct. at 1879.

Washington's abortion coverage mandate includes a mechanism for individualized exemptions.[6] Section 48.43.065(3)(a) provides that no organization may be required to purchase coverage for a service (like abortion) "if they object to doing so for reasons of conscience or religion," Pursuant to this exemption mechanism, Washington has promulgated regulations which determine how the Insurance Commissioner is to make the exemptions available. Wash. Admin. Code § 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. They require "[a]ll carriers" to file, with the Commission, "a full description of the process it will use to recognize an organization or individual's exercise of conscience based on a religious belief . . . to the purchase of coverage for a specific service." *Id.* § 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(1).[7]

_____

[6]In its entirety, section 48.43.065(3)(a) reads, "No individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion."

[7]The parties disputed whether Cedar Park could be exempt from the coverage mandate if it simply chose not to offer maternity care in its plan. *Cedar Park,* 2023 WL 4743364, at *10. However, the language of section 48.43.065(3) does not require any entity to make this kind of

Although Washington contends that the Insurance Commissioner does not use discretion when making decisions about approving exemptions and that any discretion lies with the carrier and customer to negotiate a plan, Doc. 104 at 22, this distinction is irrelevant. A recent en banc decision from this Court makes clear that "the mere existence of a discretionary mechanism to grant exemptions can be sufficient to render a policy not generally applicable" regardless of whether such a mechanism has been exercised. *Fellowship of Christian Athletes*, 82 F.4th at 685 (citing *Fulton*, 141 S. Ct. at 1879). The administrative code explicitly requires providers to inform the State about exceptions—a requirement that would have no purpose if not to allow the administrator to review those exceptions. Because Section 48.43.065(3)(a) is a "formal mechanism" for individualized exemptions, it renders the abortion coverage mandate not generally applicable.

---

bargain to enjoy its protections. Regardless of how this provision might have been applied to Cedar Park or any other organization, its mere existence destroys the general applicability of the law.

### III. THE LAW OF THE CASE DOES NOT FORECLOSE REVIEW OF CATEGORICAL EXEMPTIONS.

The exemptions for religiously sponsored health insurance carriers and health care facilities prove fatal to any claim that the abortion coverage mandate is generally applicable. But instead of reaching this conclusion, the district court invoked the law of the case and refused to evaluate the individual exemptions' impact on the law's general applicability. *See Cedar Park*, 2023 WL 4743364, at *10 (stating that "[t]he 'similarly situated' question is the same for Cedar Park's Free Exercise claim" as it is for its Equal Protection claim). Instead, the district court erroneously held that this Court's prior decision that Cedar Park is not similarly situated with religiously sponsored health insurance carriers and providers necessarily requires a conclusion that their activities are not comparable for Free Exercise analysis. That was a mistake this Court should correct.

The law of the case doctrine and its cousin, the rule of mandate, both foreclose subsequent analysis of a legal question already decided by a court in ongoing litigation. "The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *Herrington v. Cnty. Of*

*Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (quotations omitted). It is a discretionary, judicial "invention" to "aid in the efficient operation of court affairs," and its application is reviewed for an abuse of discretion. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *Id.* (quoting *Liberty Mutual Ins. Co. v. E.E.O.C.,* 691 F.2d 438, 441 (9th Cir. 1982)) (alterations in the original).

The rule of mandate is "broader" than the law of the case doctrine and, on remand, "allows a lower court to decide anything not foreclosed by the mandate" of the higher court. *Herrington*, 12 F.3d at 904. Although a lower court must "execute the terms of a mandate," it remains "free" even to "deviate from the mandate if it is not counter to the spirit of the circuit court's decision." *United States v. Perez*, 475 F.3d 1110, 1113 (9th Cir. 2007).

## A. The Question Of Whether Activities Are Comparable Is Different From The Question Of Whether Actors Are Similarly Situated.

The district court misapplied the law of the case doctrine because it asked the wrong question. As explained in Section II.A. *supra*,

evaluating a law's general applicability in the Free Exercise context requires the court to determine if the government treated comparable *activities* differently. *Tandon*, 141 S. Ct. at 1296. In contrast, Equal Protection claims require analysis of whether *actors* are "similarly situated" but treated differently because of a discriminatory intent. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). These two questions are different. This Court has yet to decide whether the *activities* in question were comparable.

In *Cedar Park Assembly of God v. Kreidler* (*Cedar Park I*), 860 F. App'x 542 (9th Cir. 2021), this Court determined that Cedar Park had not pled a claim under the Equal Protection clause. This Court ruled that Cedar Park was not "similarly situated" to religious health care facilities or health insurance carriers because "the providers are in the business of providing health services, while religious organizations merely purchase health coverage." *Id*. at 544. Cedar Park might not be "similarly situated" with religious insurance providers because it is not "indistinguishable," *Ross v. Moffitt*, 417 U.S. 600, 609 (1974), or "alike in all relevant ways," *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Churches like Cedar Park and insurance carriers are different—

17

and perhaps not similarly situated under the Equal Protection Clause. But so too are Caesars Palace and Calvary Chapel. *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2609 (2020) (Gorsuch, J., dissenting) ("[T]here is no world in which the Constitution permits Nevada to favor Caesars Palace over Calvary Chapel.").

However, Cedar Park's activities are "comparable" to those of religious healthcare providers and religious health insurance carriers for the purposes of Free Exercise analysis. To evaluate Cedar Park's Free Exercise claim, the district court needed to examine whether their relevant activities—here, providing health insurance coverage for their employees—impact the State's asserted interest in the same way. The district court did not do so. Although the district court refused to decide this question, the record is complete enough for this Court to reach the right conclusion.

The COVID-19 cases inform a proper evaluation of Cedar Park's Free Exercise claim. In *Roman Catholic Diocese*, the Supreme Court found that the activities of churches, synagogues, campgrounds, garages, large retail stores, manufacturing plants, and transportation facilities were comparable under the Free Exercise Clause because they

undermined the government's asserted interest in the same way. Each facilitated large gatherings of people, comparably undermining the government's interest in preventing the spread of disease. 141 S. Ct. at 66–67.

Comparing Cedar Park's activities to those of religiously sponsored health insurance carriers leads to the same conclusion. An insurance carrier seeking to offer products on the market has the same impact on the State's interest as an employer attempting to purchase those same products. Selling insurance policies that do not include abortion coverage and purchasing insurance that does not include abortion coverage both result in less than "all Washingtonians" having abortion coverage. A religious insurance carrier's refusal to sell insurance with abortion coverage and Cedar Park's refusal to buy insurance with abortion coverage are comparable activities under the Free Exercise Clause.

## B. The District Court Should Not Have Applied The Law Of The Case And The Rule of Mandate.

The law of the case doctrine "promote[s] judicial finality," so "it necessarily follows that the law of the case acts as a bar *only* when the issue in question was actually considered and decided by the first court." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995), *as amended on*

*denial of reh'g* (June 2, 1995) (emphasis added). This Court's decision in *Cedar Park I* was limited strictly to questions of standing.

In *Cedar Park I*, this Court found that Cedar Park did not "plausibly allege an injury-in-fact" and affirmed the district court's decision to dismiss Cedar Park's Equal Protection claim for lack of standing. *Cedar Park I*, 860 F. App'x at 544. The district court did not decide the merits of Cedar Park's Free Exercise claim. But on remand, the district court erroneously hid behind *Cedar Park I* to avoid considering the *merits* of Cedar Park's Free Exercise claim. [8]

Neither the law of the case nor the rule of mandate require the district court to rule as it did. In fact, the rule of mandate "allows a lower court to decide anything not foreclosed by the mandate" of the higher

---

[8] The district court's determination that "[t]he 'similarly situated' question is the same for Cedar Park's Free Exercise claim" as it is for its Equal Protection claim is also wrong as a simple matter of logic. In *Cedar Park I*, this Court found that Cedar Park had not sufficiently pled an injury under the Equal Protection Clause because it was not similarly situated to other religious providers. This Court also found that Cedar Park *had* sufficiently pled an injury in its Free Exercise claim. These two statements could not both be true at the same time and on the same facts if the "similarly situated" analysis applied in the same way to both claims.

court. *Herrington*, 12 F.3d at 904. This Court's decision in *Cedar Park I* did not foreclose analysis of whether Cedar Park was engaged in activity comparable to other exempted activity. And the record shows that Cedar Park and religiously sponsored health insurance carriers and healthcare facilities are engaged in activities that undermine Washington's interest in comparable ways. Accordingly, Cedar Park's religiously-motivated action is protected by the Free Exercise Clause as interpreted by the latest relevant decisions from the United States Supreme Court and this Court.

## CONCLUSION

For the reasons explained above, the district court's decision should be reversed.

Date: November 28, 2023          Respectfully submitted,

*s/Christopher T. Holinger*
Christopher T. Holinger, VSB #92693
*Robertson Center for*
*Constitutional Law*
REGENT UNIVERSITY SCHOOL OF LAW
1000 Regent University Drive
Virginia Beach, VA 23464
Tel. 757-352-4908

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 28, 2023. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

s/*Christopher T. Holinger*

Christopher T. Holinger

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-35560 and 23-35585

I am the attorney or self-represented party.

**This brief contains** 4,080 **words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Christopher T. Holinger **Date** Nov 28, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*