**Nos. 23–35560, 23–35585**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,

                         Plaintiff-Appellant/Cross-Appellee,

        v.

MYRON KREIDLER, in his official capacity as Insurance Commissioner for the
State of Washington, AKA Mike Kreidler; JAY ROBERT INSLEE, in his official
capacity as Governor of the State of Washington,

                         Defendant-Appellees/Cross-Appellants.

---

On Appeal from the United States District Court
for the Western District of Washington
Civil Case No. 3:19-cv-05181-BHS

---

**BRIEF OF MONTANA PUBLIC POLICY CENTER, INC.**
**AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT/CROSS-APPELLEE**

---

Emily Jones
Ryan Lawson
JONES LAW FIRM, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
(406) 384-7990
        *Counsel for Amicus Curiae*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Montana Public Policy Center, Inc. is a Montana non-profit corporation with no parent corporation or stockholders.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES......................................................................... iii

INTEREST OF *AMICUS CURIAE* .............................................................1

SUMMARY OF ARGUMENT ....................................................................1

ARGUMENT ........................................................................................3

   I.    SB 6219 IS NOT NEUTRAL OR GENERALLY APPLICABLE AND IS THEREFORE SUBJECT TO STRICT SCRUTINY....................................5

        A.    SB 6219'S MECHANISM FOR INDIVIDUAL EXEMPTIONS RENDERS IT NOT GENERALLY APPLICABLE...............................................6

        B.    SB 6219'S TREATMENT OF SECULAR EXEMPTIONS MORE FAVORABLY THAN RELIGIOUS ONES RENDERS IT NOT NEUTRAL OR GENERALLY APPLICABLE. .........................................................................9

        C.    SB 6219 IS NOT NEUTRAL BECAUSE IT DISCRIMINATES AGAINST RELIGIOUS BELIEFS ADVERSE TO FUNDING OR FACILITATING ABORTION SERVICES AND CONTRACEPTION. .....................................12

CONCLUSION .....................................................................................15

CERTIFICATE OF COMPLIANCE ...........................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Bowen v. Roy*,
    476 U.S. 693 (1986)................................................................5, 12

*Braunfeld v. Brown*,
    366 U.S. 599 (1961)....................................................................12

*Cantwell v. Connecticut*,
    310 U.S. 296 (1940)....................................................................12

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993)............................................ 4, 5, 6, 10, 12, 13, 14

*Davis v. Beason*,
    133 U.S. 333 (1890)....................................................................12

*Douglas v. Jeannette*,
    319 U.S. 157 (1943)....................................................................12

*Emp. Div., Dept. of Hum. Res. of Or. v. Smith*,
    494 U.S. 872 (1990).......................................................... 3, 5, 6, 8, 9, 12

*Fellowship of Christian Athletes v. San Jose Unif. Sch. Dist. Bd. of Educ.*,
    82 F.4th 664 (9th Cir. 2023) .......................................................... 4, 5, 9

*Fowler v. Rhode Island*,
    345 U.S. 67 (1953)......................................................................12

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021)..................................................... 4, 6, 7, 8, 9, 15

*Gillette v. United States.*,
    401 U.S. 437 (1971)......................................................................5

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights. Commn.*,
    138 S. Ct. 1719 (2018)................................................................ 4, 5, 6

*McDaniel v. Paty*,
  435 U.S. 618 (1978) ............................................................................12

*McGowan v. Maryland*,
  366 U.S. 420 (1961) ............................................................................12

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ..............................................................................9

*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ................................................................. 4, 9, 15

*Thomas v. Review Bd. of Ind. Employment Security Div.*,
  450 U. S. 707 (1981) ..............................................................................7

*Trinity Lutheran Church v. Comer*,
  137 S. Ct. 2012 (2017) ...................................................................11, 15

*United States v. Lee*,
  455 U.S. 252 (1982) ..............................................................................3

*Walz v. Tax Commn. of New York City*,
  397 U.S. 664 (1970) ............................................................................13

<u>Statutes</u>
RCW 48.01.080 ......................................................................................2

RCW 48.43.065(2)(a) ...................................................................... 2, 10, 14

RCW 48.43.065(2)(b) ..................................................................2, 11, 13, 14

RCW 48.43.065(3)(a) ...................................................................... 2, 10, 14

RCW 48.43.065(3)(b) ..................................................................2, 11, 13, 14

RCW 48.43.073(1) ...................................................................................1

RCW 48.43.073(3) ...................................................................................1

RCW 48.43.073(4) ................................................................................2, 8

iv

RCW 48.43.073(5) ............................................................................2, 8

Senate Bill 6219 (2018) ................................... 1, 2, 3, 5, 6, 8, 9, 10, 12, 15

Rules
Fed. R. App. P. 29(a)(2) ...................................................................1

Fed. R. App. P. 29(a)(4)(E) ..............................................................1

Treatises
J. Story, *Commentaries on the Constitution of the United States* (abridged ed. 1833) (reprint 1987) ..................................................................12

T. Cooley, *Constitutional Limitations* (1868) (reprint 1972) ...............................12

Constitutional Provisions
U.S. Const. amend. I .......................................................................3

U.S. Const. amend XIV ...................................................................3

## INTEREST OF *AMICUS CURIAE*

The Montana Public Policy Center, Inc. ("MPPC") is a nonprofit corporation that exists to promote public policy solutions that provide increased access to economic opportunities, greater individual freedoms, and encourage great participation in public matters. MPPC has an interest in ensuring that the First Amendment's protection of religious freedom is upheld throughout the country, and that religious employers are not subjected to onerous laws that unconstitutionally restrict the free exercise of their religious beliefs.

Pursuant to Fed. R. App. P. 29(a)(4)(E), counsel for MPPC certifies that this Brief was not authored in whole or in part by counsel for any party and that no person or entity, other than MPPC, has made a monetary contribution to its preparation or submission. Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to this filing.

## SUMMARY OF ARGUMENT

Washington Senate Bill ("SB") 6219 (2018) requires coverage for abortions in all health insurance plans that provide coverage for maternity cares and requires coverage for all contraceptive drugs, devices, products, and services. RCW 48.43.073(1). The statute prevents health plans from "limit[ing] in any way a person's access to services related to the abortion of a pregnancy. RCW 48.43.073(3). The law imposes a criminal penalty on anyone who violates the

abortion coverage requirements. RCW 48.01.080. The statute exempts multistate health plans and circumstances when the requirement "results in noncompliance" with federal funding regulations for Washington to receive federal funds. RCW 48.43.073(4)–(5). According to the State, the State Insurance Commissioner possesses the "discretion" to determine when the funding exception applies. (4–ER–653.)

The so-called "conscience statute" exempts religious organizations, including religious healthcare organizations, from being required to pay for abortion if "they object to doing so for reason of conscience or religion." RCW 48.43.065(2)(a) and (3)(a). While SB 6219 purportedly does not force an organization to purchase coverage for a service to which it objects on religious or moral grounds, that organization's employees must nevertheless be afforded coverage for the objectionable service under the plan for which the organization has paid a premium. RCW 48.43.065(2)(b) and (3)(b). It is entirely unclear how the requirement that employees be provided access to the objectionable service under a health plan for which the organization has paid a premium constitutes any meaningful exemption on religious or moral grounds.

The District Court held that SB 6219 was neutral (Dkt. 17) and generally applicable (*Id.* at 22), and therefore subject to rational basis review rather than strict scrutiny (*Id.*) Applying rational basis review, the District Court held that SB 6219

is rationally related to the legitimate governmental purposes of "promoting gender equity, promoting economic success of women, improving women's health, and protecting privacy." (*Id.* at 24.)

The District Court, however, reached the wrong legal conclusion and therefore erred in its summary judgment Order. SB 6219 is not generally applicable because it contains a mechanism for individualized exemptions. This fact alone subjects SB 6219 to strict scrutiny. Not only does the law allow exemptions, it favors secular exemptions over exemptions on religious grounds—indeed, it effectively disallows religious exemptions altogether. The law is therefore not neutral, either. The District Court erred in applying rational basis review, and this Court should therefore reverse.

## ARGUMENT

The Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, mandates that states shall make no law prohibiting the free exercise of religion. U.S. Const. amend. I. However, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp. Div., Dept. of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (quoting *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982)). "To avoid strict scrutiny, laws that burden

3

religious exercise must be both neutral and generally applicable." *Fellowship of Christian Athletes v. San Jose Unif. Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 685 (9th Cir. 2023) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)). The government, moreover, may not "act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Id.* (citing *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights. Commn.*, 138 S. Ct. 1719, 1731 (2018)). "Under the strict scrutiny standard, the government must demonstrate that 'a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests.'" *Id.* (citing *Lukumi*, 508 U.S. at 546 (cleaned up)).

U.S. Supreme Court authority recognizes "three bedrock requirements of the Free Exercise Clause that the government may not transgress, absent a showing that satisfies strict scrutiny." *Id.* First, "a purportedly neutral 'generally applicable' policy may not have 'a mechanism for individualized exemptions.'" *Id.* (quoting *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021)). Second, the government "may not 'treat … comparable secular activity more favorably than religious exercise.'" *Id*. (quoting *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021)). Third, the government "may not act in a manner 'hostile to … religious beliefs' or inconsistent with the Free Exercise Clause's bar on even 'subtle departures from

neutrality.'" *Id*. (quoting *Masterpiece Cakeshop*, 138 S. Ct. at 1731). Failure to satisfy any one of these requirements subjects a law to strict scrutiny. *Id*.

## I. SB 6219 IS NOT NEUTRAL OR GENERALLY APPLICABLE AND IS THEREFORE SUBJECT TO STRICT SCRUTINY.

Under *Smith* and the U.S. Supreme Court's more recent Free Exercise jurisprudence, SB 6219 is not generally applicable or neutral, thus requiring review under strict scrutiny. Over the decades, the Court has clarified what constitutes a burden on religion and what makes a law neutral and generally applicable. Facial neutrality is not determinative. *Lukumi*, 508 U.S. at 534. The Free Exercise Clause "forbids subtle departures from neutrality" and "covert suppression of particular religious beliefs." *Id*. (citing *Gillette v. United States.*, 401 U.S. 437, 452 (1971) and *Bowen v. Roy*, 476 U.S. 693, 703 (1986) (opinion of Burger, C.J.)).

"The government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop*, 138 S. Ct. at 1731. The Free Exercise Clause bars even "subtle departures from neutrality" on matters of religion. *Id*. (citing *Lukumi*, 508 U.S. at 534). The Constitution "commits government itself to religious tolerance, and upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its

practices, all officials must pause to remember their own high duty to the Constitution and to the rights it secures." *Id.* (citing *Lukumi*, 508 U.S. at 547).

SB 6219 is not neutral or generally applicable because it contains a mechanism for individualized exemptions and treats secular exemptions as more important than religious ones. Moreover, the exemption provided to religious employers—whether religious healthcare facilities or churches—is effectively meaningless. SB 6219 should therefore be subject to strict scrutiny, and the District Court erred in utilizing rational basis review.

### A. SB 6219'S MECHANISM FOR INDIVIDUAL EXEMPTIONS RENDERS IT NOT GENERALLY APPLICABLE.

Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature. *Fulton*, 141 S. Ct. at 1877 (citing *Masterpiece Cakeshop*, 138 S. Ct. 1719). A law is not generally applicable if it "invites" the government to consider the particular reasons for a person's conduct by providing "a mechanism for individualized exemptions." *Id.* "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it 'invites' the government to decide which reasons for not complying with the policy are worthy of solicitude," especially where that decision is in a government official's discretion. *Id.* at 1879 (citing *Smith*, 494 U.S. at 884). Religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others in order to merit First

6

Amendment protection." *Id.* at 1876 (citing *Thomas v. Review Bd. of Ind. Employment Security Div.*, 450 U. S. 707, 714 (1981)).

In *Fulton*, the City of Philadelphia decided not to renew its contract with Catholic Social Services ("CSS")—a faith-based adoption agency—unless CSS agreed to certify same-sex couples for adoption placements. *Fulton*, 141 S. Ct. at 1875–76. CSS subscribed to the traditional religious belief that "marriage is a sacred bond between a man and a woman" and would not certify unmarried couples or same-sex couples for adoption because CSS believed certification to be an endorsement of the prospective couples' relationship. *Id.* at 1876. The City rationalized the suspension of the 50-year relationship by labeling CSS's policy "discrimination that occurs under the guise of religious freedom." *Id.* at 1919 (Barrett, J. concurring).

CSS filed suit alleging that the City's decision violated the Free Exercise Clause and Free Speech Clause of the First Amendment. *Id.* at 1876. The district court denied preliminary relief, concluding that the contract's non-discrimination requirement and the Fair Practices Ordinance were neutral and generally applicable, and the Third Circuit affirmed. *Id.* The U.S. Supreme Court disagreed, noting at the outset that "it is plain that the City's actions have burdened CSS's religious exercise by putting it to the choice of curtailing its mission or approving relationships inconsistent with its beliefs." *Id.*

7

The Court declined to overrule *Smith* as CSS urged, finding instead that—consistent with *Smith*—the City's policies were not generally applicable. *Id.* at 1876–77. This determination hinged on the following language of the City's standard foster care contract:

> Provider shall not reject a child or family including, but not limited to prospective foster or adoptive parents, for Services based upon their sexual orientation unless an exception is granted by the Commissioner or the Commissioner's designee, in his/her sole discretion.

*Id.* at 1878 (cleaned up). The Court explained that the mere existence of a mechanism for granting exceptions was enough to render the contractual provision not generally applicable. *Id.* at 1879 (citing *Smith*, 494 U.S. at 884).

Like the contractual provision at issue in *Fulton*, SB 6219 plainly contains a mechanism for individualized exemptions. On its face, the statute grants the State discretion to exempt a plan from covering abortions if that requirement would render the plan "noncomplian[t] with federal requirements that are a prescribed condition to the allocation of federal funds to the state."[1] RCW 48.43.073(5). In other words, if the State might lose money by requiring a plan to cover abortion, it allows itself the discretion to choose the money instead. In addition, the statute excludes multistate plans. RCW 48.43.073(4). Churches and other religious employers who

---

[1] Presumably, this refers to Medicaid health plans subject to Hyde Amendment requirements that allow federal reimbursement for abortions in very limited circumstances, although the statute may apply to other scenarios as well.

object to covering abortion, though, have no such blanket or discretionary exemption. This system specifically provides a mechanism for individualized exemptions, and thus renders SB 6219 not generally applicable. *Fulton*, 141 S. Ct. at 1877; *Smith*, 494 U.S. at 884. The reasons for the exceptions do not matter—the government does not get to value its own secular, monetary reasons for valuing an exemption over religious ones. *Id.* Because SB 6219's exemption mechanism renders it not generally applicable, strict scrutiny should apply.

**B.** **SB 6219's Treatment Of Secular Exemptions More Favorably Than Religious Ones Renders It Not Neutral Or Generally Applicable.**

Government regulations are not neutral and generally applicable "whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296 (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020); *see also Fulton*, 141 S. Ct. at 1877 ("A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way")). "Targeting" religion is not required to demonstrate a Free Exercise violation. *Fellowship of Christian Athletes*, 82 F.4th at 686. Moreover, "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 141 S. Ct. at 1296 (citing *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 67).

Neutrality and general applicability are interrelated, and failure to satisfy one requirement is a likely indication that the other has not been satisfied. *Lukumi*, 508 U.S. at 531. "A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.* at 531–32. In *Lukumi*, the Supreme Court struck down a city ordinance that prohibited animal sacrifices, a necessary practice for the Santeria faith. *Id*. at 524–28. The city claimed its purpose for the ordinance was to protect public health from the disposal of animal carcasses in public spaces. *Id*. at 544. The ordinance did not, however, prohibit restaurants and hunters from similarly unhealthy disposals of animal carcasses. *Id*. at 544–45. The Court concluded that these exceptions meant the ordinances were not generally applicable and thus subject to strict scrutiny. *Id*. at 545–46.

Whatever Washington's purported interests in enacting SB 6219 were, they are directly undermined by allowing various exemptions for multistate plans and for circumstances that would render SB 6219's requirements noncompliant with federal funding regulations but denying them for religious organizations. Although SB 6219 purports to allow religious healthcare organizations and other religious organizations to decline to purchase coverage for an objectionable service (RCW 48.43.065(2)(a) and (3)(a)), this purported exemption is misleading. This is because, even though the statute says no one can be forced to purchase coverage that violates their conscience,

an employee seeking the objectionable service will nevertheless be provided coverage for the objectionable service under the plan for which the objecting organization paid a premium. (RCW 48.43.065(2)(b) and (3)(b).) The exemption is, therefore, entirely illusory. The statute thus treats the exemption for multistate plans and federal dollar reimbursement or funding circumstances entirely differently than it treats the exemption on the basis of religious or moral tenets.

This special treatment for secular exemptions but not religious ones is precisely the type of religious discrimination the Free Exercise Clause prohibits. The Free Exercise Clause "'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws" that disfavor religion. *Trinity Lutheran Church v. Comer*, 137 S. Ct. 2012, 2019 (2017). By allowing an exemption for circumstances that may limit federal dollars and for multistate plans, the State is overtly valuing monetary considerations over the exercise of sincerely held religious beliefs. The State is demonstrating that losing federal funds is important enough to warrant an exemption, but a church's religious beliefs that prohibit paying for or facilitating an abortion are not. The First Amendment does not allow this favoritism. *Id*. For purposes of the Free Exercise Clause, what's good for the goose is good for the gander. If secular reasons warrant exemption, then so do religious ones.

11

### C.   SB 6219 Is Not Neutral Because It Discriminates Against Religious Beliefs Adverse To Funding Or Facilitating Abortion Services And Contraception.

At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons. *Lukumi*, 508 U.S. at 532 (citing *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961) (plurality opinion); *Fowler v. Rhode Island*, 345 U.S. 67, 69–70 (1953)). Indeed, it was "historical instances of religious persecution and intolerance that gave concern to those who drafted the Free Exercise Clause." *Id.* (citing *Bowen*, 476 U.S. at 703 (opinion of Burger, C. J.); J. Story, *Commentaries on the Constitution of the United States* §§ 991–992 (abridged ed. 1833) (reprint 1987); T. Cooley, *Constitutional Limitations* 467 (1868) (reprint 1972); *McGowan v. Maryland*, 366 U.S. 420, 464 and n.2 (1961) (opinion of Frankfurter, J.); *Douglas v. Jeannette*, 319 U.S. 157, 179 (1943) (Jackson, J., concurring in result); *Davis v. Beason*, 133 U.S. 333, 342 (1890)).

"Although a law targeting religious beliefs as such is never permissible, if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral; and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533 (cleaned up) (citing *McDaniel v. Paty*, 435 U.S. 618, 626 (1978) (plurality opinion); *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940); *Smith*, 494 U.S. at 878–79).

12

There are many ways of demonstrating that the object or purpose of a law is the suppression of religion or religious conduct. *Id.* To determine the object of a law, courts must begin with its text, for the minimum requirement of neutrality is that a law must not discriminate on its face. *Id.* "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernible from the language or context." *Id.* However, official action "that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Id.* at 534. The Free Exercise Clause protects against "governmental hostility which is masked as well as overt." *Id.* Courts must "survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders." *Id.* (quoting *Walz v. Tax Commn. of New York City*, 397 U.S. 664, 696 (1970) (Harlan, J., concurring)).

The so-called "conscience statute" provides a meaningless exemption for religious objectors like Cedar Park because it doesn't actually remove the objectionable services from coverage in the plan. *See* RCW 48.43.065(2)(b) and (3)(b); *see also* Opening Br. of Cedar Park at 14–15 (discussing Cedar Park's objections to having abortion covered in its health plan or facilitating abortion coverage through veiled cost shifting). Although the "conscience statute" purports to "recognize[] that every individual possesses a fundamental right to exercise their

13

religious beliefs and conscience," the statute provides no meaningful way for that right to be exercised.

The statute claims that individuals or organizations "with a religious or moral tenet opposed to a specific service" cannot be required to purchase coverage for that service. RCW 48.43.065(2)(a) and (3)(a). Subsections (2)(b) and (3)(b), however, provide that the statute "shall not result in an "enrollee being denied coverage of, and timely access to, any service or services excluded from their benefits package as a result of their employer's or another individual's exercise of the conscience clause in (a) of this subsection." RCW 48.43.065(2)(b) and (3)(b). For organizations like Cedar Park, then, the "conscience statute" provides no meaningful relief. Cedar Park can object to paying for or facilitating payment or access to abortion, but the law requires that its employees be covered for the objectionable services by the plan for which Cedar Park has paid a premium. The exemption on religious or moral grounds is entirely illusory. Cedar Park can object to abortion being covered in its plan—but the statute mandates Cedar Park's employees still be granted access to those services and that those services be covered by the Cedar Park health plan for which Cedar Park paid a premium.

This statute is therefore not facially neutral—it provides no actual relief for religious objectors. *Lukumi*, 508 U.S. at 534. A church can object to the payment or facilitation of coverage for abortion—but the service will nevertheless be covered

under the church's plan. In addition, allowing limited exemptions for secular activities while not extending the exceptions to other objectors like churches impermissibly treats comparable secular activities better than religious ones. *Tandon*, 141 S. Ct. 1294. Because of this, SB 6219 is not neutral, and strict scrutiny applies.

## **CONCLUSION**

On its face, SB 6219 contains a system allowing for individualized exemptions—making it "straightforward" that the law is not generally applicable. *Fulton*, 141 S. Ct. at 1879. In addition, SB 6219 unlawfully favors secular activity over religious exercise by allowing secular exemptions—for multi-state plans and federal funding exceptions—but not allowing exemptions for religious objectors like Cedar Park. Free Exercise rights are just as important as the secular values for exempting multi-state plans and the discretion to maintain federal funding. *Trinity Lutheran Church*, 137 S. Ct. at 2012. This favored treatment renders SB 6219 both not generally applicable and not neutral. Lastly, the conscience statute merely pays lip service to the right of Free Exercise. The conscience statute unfairly tells religious organizations they can object to paying for abortion, but it will still be covered and accessible for enrolled employees under the religious organization's plan. Each of these issues render SB 6219 not neutral and not generally applicable, requiring SB 6219 to survive strict scrutiny. The District Court therefore erred in applying only

rational basis review. For these reasons, the Court should reverse the District Court's summary judgment order.

DATED this 29th day of November 2023.

Respectfully submitted,

/s/ *Ryan Lawson*

Emily Jones
Ryan Lawson
JONES LAW FIRM, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
(406) 384-7990
*emily@joneslawmt.com*
*ryan@joneslawmt.com*

COUNSEL FOR *AMICUS CURIAE*

## **CERTIFICATE OF COMPLIANCE**

9th Cir. Case Numbers 23–35560 c/w 23–35585

I am the attorney or self-represented party.

This brief contains 3,512 words, including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief (select only one):

[ ] complies with the word limit of Cir. R. 32–1.
[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 23.1–1.
[**x**] is an amicus brief and complies with the word limit of Fed. R. Civ. P. 29(a)(5), Cir. R. 29–2(c)(2), or Cir. R. 29–2(c)(3).
[ ] is for a death penalty case and complies with the word limit of Cir. R. 32–4.
[ ] complies with the longer length limit permitted by Cir. R. 32–2(b) because (select only one):
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.
[ ] complies with the length limit designated by court order dated _____.
[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32–2(a).

DATED this 29th day of November, 2023.

Respectfully submitted,

/s/ *Ryan Lawson*
Emily Jones
Ryan Lawson
JONES LAW FIRM, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
(406) 384-7990
*emily@joneslawmt.com*
*ryan@joneslawmt.com*

COUNSEL FOR *AMICUS CURIAE*