Nos. 23-35560, 23-35585

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,
*Plaintiff-Appellant/Cross-Appellee*,

v.

MYRON "MIKE" KREIDLER, in his official capacity as Insurance
Commissioner for the State of Washington; JAY INSLEE, in his official
capacity as Governor of the State of Washington,
*Defendants-Appellees/Cross-Appellants*.

On Appeal from the United States District Court
for Western Washington, Tacoma
No. 3:19-cv-05181-BHS (Hon. Benjamin H. Settle)

### BRIEF OF *AMICI CURIAE*
### CHRISTIAN LEGAL SOCIETY
### AND THE BECKET FUND FOR RELIGIOUS LIBERTY
### SUPPORTING PLAINTIFF-APPELLANT/CROSS-APPELLEE

Eric C. Rassbach
The Hugh and Hazel Darling
Religious Liberty Clinic
Pepperdine University
Caruso School of Law
24255 Pacific Coast Hwy.
Malibu, CA 90263
Telephone: (310) 506-4611
eric.rassbach@pepperdine.edu

Noel J. Francisco
Megan Lacy Owen
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3404
Facsimile: (202) 626-1700
njfrancisco@jonesday.com

*Counsel for* Amici Curiae

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* Christian Legal Society states that it is not a publicly-held corporation, does not issue stock, and does not have a parent corporation.

*Amicus curiae* The Becket Fund for Religious Liberty likewise states that it is not a publicly-held corporation, does not issue stock, and does not have a parent corporation.

*/s/ Noel J. Francisco*
Noel J. Francisco

*Counsel for* Amici Curiae
*Christian Legal Society and*
*The Becket Fund for*
*Religious Liberty*

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ....................................................................... i

INTERESTS OF *AMICI CURIAE* ........................................................... 1

SUMMARY OF ARGUMENT**ERROR! BOOKMARK NOT DEFINED.**

ARGUMENT ............................................................................................ 4

    I.    SB 6219 violates the Free Exercise Clause in at least four separate ways. ................................................................. 4

        A.    SB 6219's system of individualized exemptions triggers strict scrutiny. .................................................. 4

        B.    SB 6219 triggers strict scrutiny because it treats comparable secular activity better than churches' religious activity. .............................................................. 7

        C.    SB 6219 includes categorical exemptions that do not extend to religious organizations, triggering strict scrutiny. .................................................................. 9

        D.    SB 6219 is subject to strict scrutiny because it targets churches' religious activity for special disfavor. ...................................................................... 11

        E.    SB 6219 cannot withstand strict scrutiny. ................. 14

    II.    Allowing burdens on churches' free exercise in these circumstances would draw *Smith*'s validity into question. .................................................................................. 17

CONCLUSION ....................................................................................... 19

CERTIFICATE OF COMPLIANCE ....................................................... 21

CERTIFICATE OF SERVICE ................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ................................................................ 7, 9, 10, 13

*City of Boerne v. Flores,*
521 U.S. 507 (1997) ................................................................ 12

*Employment Division, Department of Human Resources of Oregon v. Smith,*
494 U.S. 872 (1990) ................................................................ 16, 17

*Fellowship of Christian Athletes, et al. v. San Jose Unified School District Board of Education, et al.*
82 F.4th 664 (9th Cir. 2023) (en banc) ....................................... *passim*

*Foothill Church v. Watanabe,*
3 F.4th 1201 (9th Cir. 2021) .................................................... 4, 14

*Foothill Church v. Watanabe,*
623 F. Supp. 3d 1079 (E.D. Cal. 2022) ..................................... 5, 14

*Fulton v. City of Philadelphia,*
141 S. Ct. 1868 (2021) ............................................................. *passim*

*Gonzales v. O Centro Espírita Beneficente União,*
546 U.S. 418 (2006) ................................................................. 13

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n,*
138 S. Ct. 1719 (2018) ............................................................. 9, 10, 11

*Tandon v. Newsom,*
141 S. Ct. 1294 (2021) (per curiam) ......................................... *passim*

STATUTES

Consolidated Appropriations Act, Pub. L. No. 117-103,
136 Stat. 49 (2022) ................................................................. 3

i

RCW § 48.43.005 ................................................................................ 6, 8

RCW § 48.43.065 .............................................................................. 8, 11

RCW § 48.73.073 ............................................................................... 3, 8

**OTHER AUTHORITIES**

*2018 Senate Bill 6219: Concerning Health Plan Coverage of Reproductive Health Care*, WASHINGTONVOTES.ORG .......................... 11

Mark Markovich, *Inslee to Veto Abortion Insurance Bill*, KOMO NEWS (Mar. 5, 2018) ................................................................. 12

## INTERESTS OF *AMICI CURIAE*

*Amici* are Christian Legal Society and the Becket Fund for Religious Liberty.[1] *Amici* submit this brief to express concern at the prospect of state governments like Washington coercing religious employers with sincere religious objections to abortion to provide abortion coverage.

Christian Legal Society ("CLS") is a nondenominational association of Christian attorneys, law students and law professors. CLS's advocacy arm, the Center for Law & Religious Freedom, works to defend religious liberty and the sanctity of human life and thus, has a deep interest in this case. CLS has long believed that pluralism, essential to a free society, prospers only when the First Amendment rights of all Americans are protected.

The Becket Fund for Religious Liberty is a nonprofit, nonpartisan law firm dedicated to protecting the free expression of all religious traditions. It has represented agnostics, Buddhists, Christians, Hindus,

---

[1] All parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4), *amici* state that no party's counsel authored this brief in part or in whole, and no person (other than *amici*, their members, and their counsel) has contributed money to fund the preparation or submission of this brief.

1

Jews, Muslims, Native Americans, Santeros, Sikhs, and Zoroastrians, among others, in lawsuits across the country and around the world. It is frequently involved, both as counsel of record and as *amicus curiae*, in cases seeking to preserve the freedom of all religious people to pursue their beliefs without excessive government interference.

## SUMMARY OF ARGUMENT

The district court erred in holding that SB 6219 does not violate Cedar Park Assembly of God's free exercise rights. Since that ruling, this Court, sitting en banc, has "distilled" Supreme Court authority into a straightforward framework for evaluating free exercise claims like Cedar Park's. *See Fellowship of Christian Athletes, et al. v. San Jose Unified School District Board of Education, et al.* 82 F.4th 664, 686 (9th Cir. 2023) (en banc) ("*FCA*"). *FCA* dispels any doubt that the district court erred and elucidates the proper free exercise analysis.

*FCA* illustrates that SB 6219—which substantially burdens Cedar Park's religious exercise by requiring it to be complicit in facilitating coverage for services to which it objects, 5-ER-760—violates each of the "bedrock requirements" of the Free Exercise Clause that subject a law to strict scrutiny. *Id.* The law provides for discretionary individualized exemptions; treats comparable secular activity more favorably than Cedar Park's religious activity; provides a whole host of categorical exemptions to secular health plans; and reflects hostility toward religion. It cannot survive strict scrutiny because it advances no compelling government interest, let alone through narrowly tailored means.

3

## ARGUMENT

**I.    SB 6219 violates the Free Exercise Clause in at least four separate ways.**

As the en banc Ninth Circuit recently explained in *FCA*, "three bedrock requirements of the Free Exercise Clause" subject laws in the breach to strict scrutiny: (1) a neutral, generally applicable policy "may not have a mechanism for individualized exemptions;" (2) the government may not treat "comparable secular activity more favorably than religious exercise;" and (3) "the government may not act in a manner hostile to . . . religious beliefs or inconsistent with the Free Exercise Clause's bar on even subtle departures from neutrality." *Id.* at 686 (internal quotation marks and citations omitted). SB 6219 is subject to strict scrutiny on each of these grounds and cannot carry the heavy burden of that review.

**A.    SB 6219's system of individualized exemptions triggers strict scrutiny.**

Both the Supreme Court and this Court have held that laws that substantially burden religion and "incorporate[] a system of individualized exemptions" must be subject to strict scrutiny, even if the government has never issued such an exemption. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878 (2021); *see FCA*, 82 F.4th at 686. In

4

*Fulton*, the City of Philadelphia's contract with Catholic Social Services for foster care services included a nondiscrimination clause, which the city invoked in an effort to require Catholic Social Services to certify same-sex couples as foster parents. 141 S. Ct. at 1875. Philadelphia's "sole discretion" to grant exceptions from the nondiscrimination provision was a "system of individual exemptions" that rendered the provision not generally applicable. *Id.* at 1878. This Court in *FCA* rejected a school district's "overly narrow" understanding of *Fulton*, noting that "the mere existence of a discretionary mechanism to grant exemptions can be sufficient to render a policy not generally applicable, regardless of the actual exercise." 82 F.4th at 687–88.

SB 6219 permits just such individualized exemptions. The federal Weldon Amendment restricts federal funding to states that "subject[] any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions." Consolidated Appropriations Act, Pub. L. No. 117-103, § 507(d), 136 Stat. 49, 496 (2022). SB 6219 expressly limits application of the abortion mandate in order to avoid violating federal conditions on state funding. *See* RCW § 48.73.073(5). But

5

Washington has no formal process to determine when to exempt plans. Instead, the Office of Insurance Commissioner ("OIC") exercises its discretion to address potential Weldon Amendment issues on a case-by-case basis. *See* ECF No. 103-1 at 7, No. 3:19-cv-05181-BHS (W.D. Wash.) ("[B]ecause the language of the savings clause in SB 6219 requires an exemption 'to the minimum extent possible,' the OIC has authority and discretion to choose how to implement this exemption."); ECF No. 93-5 at 29-30, No. 3:19-cv-05181-BHS (W.D. Wash.) ("If the office were concerned about a possible Weldon Amendment issue, we would contact our attorney."). Just as the school district in *FCA* exercised discretion on a "case-by-case basis," 82 F.4th at 678, the OIC exercises on a case-by-case basis its discretionary authority to determine how to implement an exemption to preserve federal funding.

This Court recently directed a district court to consider a similar mandate and individualized exemption scheme under *Fulton*. *See Foothill Church v. Watanabe*, 3 F.4th 1201, 1201 (9th Cir. 2021). On remand, the district court found that California's abortion-coverage mandate could not withstand strict scrutiny. There, the director of California's Department of Managed Health Care ("DMHC") had the

6

discretion to render plans exempt from the abortion requirement, despite the fact that the DMHC had no "written rules, policies, or procedures for requesting an exemption from its abortion coverage requirement." *Foothill Church v. Watanabe*, 623 F. Supp. 3d 1079, 1087 (E.D. Cal. 2022). Here, the OIC has similar discretion to exempt plans despite having no explicit process for determining when or how to do so. This prospect of individualized exemptions subjects SB 6219 to strict scrutiny.

### B. SB 6219 triggers strict scrutiny because it treats comparable secular activity better than churches' religious activity.

SB 6219 is also subject to strict scrutiny because it provides exemptions from the abortion mandate to categories of secular health plans but does not exempt Cedar Park, treating comparable secular activity more favorably than religious activity.

"[W]hether two activities are comparable for the purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam). For example, in *Tandon*, California's restriction on at-home religious worship services was not neutral and generally applicable because it had exemptions for

7

comparable secular activities at places like hair salons, movie theaters, and restaurants. *Id.* at 1297. The Court emphasized that "[c]omparability is concerned with the *risks* various activities pose, not the reasons why people gather." *Id.* at 1296. Similarly, in *FCA*, the school district claimed that by requiring leaders to sign a statement of faith and sexual purity, FCA violated the district's nondiscrimination policy. *See* 82 F.4th at 671. Though the district claimed an interest in ensuring equal access for all students to all programs, this interest was undermined by permitting secular groups to discriminate (for example, the Senior Women club permissibly excluded non-female identifying students). *Id.* at 689. This "acceptance of comparable selective secular organizations render[ed] [the district's] decision to revoke and refuse recognition to FCA subject to strict scrutiny." *Id.* at 689–90.

Washington's differential treatment of comparable insurance plans likewise triggers strict scrutiny analysis. Washington law exempts many different types of insurance plans from the definition of "health plans" subject to the abortion mandate, including short term, limited purpose plans that would otherwise be subject to the mandate because they provide maternity and contraceptive coverage. RCW § 48.43.005(31). The

8

exempted categories of insurance plans and Cedar Park's plan are comparable because providing an exemption to the abortion mandate for either would similarly undermine Washington's asserted interest in protecting women's access to reproductive health care. Because it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interest in a similar way," SB 6219 is not generally applicable under *Tandon* and *Fellowship of Christian Athletes*, and it is thus subject to strict scrutiny. *Tandon*, 141 S. Ct. at 1877.

### C. SB 6219 includes categorical exemptions that do not extend to religious organizations, triggering strict scrutiny.

SB 6219 is also not generally applicable because of its broad categorical exemptions. "[C]ategories of selection are of paramount concern when a law has the incidental effect of burdening religious practice." *Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993). Where a categorical exemption threatens the government's interest "in a similar or greater degree [than the prohibited religious exercise] does," it must face strict scrutiny. *Id.* at 543. Again, a law that "prohibits religious conduct while permitting secular conduct

9

that undermines the government's asserted interest in a similar way," is not generally applicable. *Fulton*, 141 S. Ct. at 1878. Indeed, government regulations are not neutral or generally applicable–triggering strict scrutiny–"whenever they treat *any* comparable secular activity more favorably than religious exercise." *Id.* at 1296.

Here, the asserted government interest supporting SB 6219 is undermined by the law's categorical exemptions to different types of insurance plans from its definition of "health plan." RCW § 48.43.005(31). In addition, SB 6219 provides an exemption to the abortion mandate if necessary to avoid violating federal conditions on state funding, and exempts plans that do not provide comprehensive maternity coverage. *See* RCW § 48.73.073(1)(a), (5). And Washington's provision for conscience protection exempts religiously sponsored health carriers from the abortion coverage requirement. *See* RCW § 48.43.065(2). If exempting religious employers like Cedar Park from the mandate undermines Washington's interest in protecting women's access to reproductive health care, that interest is similarly undermined by exempting other plans that provide maternity and abortifacient coverage, plans provided

10

by religiously sponsored health carriers, or plans that do not include comprehensive maternity coverage.

**D.    SB 6219 is subject to strict scrutiny because it targets churches' religious activity for special disfavor.**

When the government makes an "improper attempt to target [a religion][,]" strict scrutiny is triggered. *Lukumi*, 508 U.S. at 534-35. Such improper targeting can take the form of either open animus toward religion or special burdens on religious exercise. *Id.* at 535. Both are present here.

This Court in *FCA* observed open animus in a series of hostile statements, including description of the group's beliefs as "choos[ing] darkness" and "twisting the truth." 82 F.4th at 692. The Supreme Court similarly has observed open animus sufficient to trigger strict scrutiny review in comments of public officials that cast "doubt on the [government's] fairness and impartiality." *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719, 1730 (2018).

But while animus is certainly sufficient to show improper targeting of religion, it is not necessary. *See Lukumi*, 508 U.S. at 535; *FCA*, 82 F.4th at 686 (noting that "even subtle departures from neutrality" violate the Free Exercise Clause). Courts look for targeting in a statute's "text" and

11

its "effect" "in its real operation." *Lukumi*, 508 U.S. at 535. They further examine "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision-making body." *Masterpiece*, 138 S. Ct. at 1731. In *Lukumi*, for example, the obvious effect of a law prohibiting "unnecessary" animal killings on Santería religious exercise demonstrated that the law improperly targeted religion, even absent the openly hostile commentary sometimes evident in other cases. 508 U.S. at 537. These impermissible effects can appear in the "differential treatment of two religions" as much as in differential treatment of religion as compared to secular activity. *Id.* at 536.

The unique burdens SB 6219 places on churches like Cedar Park demonstrate that it targets religious exercise. The contrast is evident even in comparison to other religious actors. Health care providers, religiously sponsored health carriers, and health care facilities may not be required "in any circumstances to participate in the provision of or payment for a specific service if they object to so doing for reason of

conscience or religion." RCW § 48.43.065(2)(a). But that exemption does not extend to Cedar Park as a church. *See* RCW § 48.43.065(3). Its health plan must still include "coverage of, and timely access to," any services "excluded from [employees'] benefits package as a result of their employer's . . . exercise of the conscience clause," even if Cedar Park does not "purchase" that coverage directly. RCW § 48.43.065(3)(a), (b). SB 6219 thus requires Cedar Park to facilitate access to services to which it objects by facilitating access to a health plan that provides those services.

And while animus is not required to establish targeting, the State's special disfavor for Cedar Park's religious exercise is evident not just in SB 6219's effects but also in "contemporaneous statements made by members of the decisionmaking body" and legislative proceedings. *Masterpiece Cakeshop*, 138 S. Ct. at 1731. In the process of drafting, promoting, passing, and implementing SB 6219, Washington state actors demonstrated that they were both aware of and intended the law's burdens on religious organizations. Proposed amendments to exempt religious organizations from the abortion mandate failed in both the House and the Senate. *See 2018 Senate Bill 6219: Concerning Health Plan Coverage of Reproductive Health Care*, WASHINGTONVOTES.ORG,

https://www.washingtonvotes.org/2018-SB-6219. SB 6219's sponsor, Senator Steve Hobbs, simply dismissed religious organizations' objections to the burdens the law imposes: "Healthcare is about the individual, not about them [religious organizations]." Mark Markovich, *Inslee to Veto Abortion Insurance Bill*, KOMO NEWS (Mar. 5, 2018), https://tinyurl.com/4vc5mw5u. This context illustrates that the motivation behind SB 6219 was not "unclear" as the district court held it to be. 1-ER-019. The law is thus subject to strict scrutiny because it targets religious exercise for special disfavor.

### E.    SB 6219 cannot withstand strict scrutiny.

Having triggered strict scrutiny in at least four separate ways, SB 6219 cannot possibly satisfy that standard, the "most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). "A government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton*, 141 S. Ct. at 1881 (quoting *Lukumi*, 508 U.S. at 546). And "the government has the burden to establish that the challenged law satisfies strict scrutiny." *Tandon*, 141 S. Ct. at 1296.

14

### 1. 6219 serves no compelling government interest.

"[C]ourts must scrutinize the asserted harm of granting *specific exemptions* to *particular religious claimants.*" *Fulton*, 141 S. Ct. at 1881 (emphasis added) (internal quotation marks omitted)). In addition, when the government restricts religious conduct protected by the First Amendment but fails "to restrict other conduct producing substantial harm or alleged harm of the same sort," the government's asserted interest is not compelling. *Lukumi*, 508 U.S. at 546–47; *see also Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 433 (2006) (noting exception for another religious use of peyote in a different section of the same controlled substances law as evidence that the government lacked a compelling interest in the prohibition).

Here, the laundry list of categorical exemptions for other plan types and religious health care providers proves any asserted interest in requiring Cedar Park to facilitate abortion coverage could not be compelling. By permitting broad categorical exemptions to the abortion mandate but refusing to grant Cedar Park an exemption, SB 6219 does exactly what the animal slaughtering ordinances did in *Lukumi*. It restricts religious exercise protected under the First Amendment while

exempting other secular (and even some religious) conduct that produces the same "harm" to the government's asserted interest. Washington has not proved that its asserted interest in SB 6219 is compelling.

### 2.  Even if a compelling government interest existed, SB 6219 does not further it.

Even if the State could establish a compelling interest in denying an exemption to a religious organization, it must still show its refusal to do so advances that interest. *Fulton* 141 S. Ct. at 1881. *Foothill Church* involved a similar abortion mandate that required churches to provide abortion coverage to religious employees who shared the churches' views on abortion. 623 F. Supp. 3d. at 1095. There, the court found that the government's interest in withholding an exemption from those churches whose employees also oppose abortion cannot be compelling. *Id.* The same is true here—compelling Cedar Park to offer abortion coverage through its insurance policy will not actually advance the government's asserted interest. All Cedar Park employees commit to abide by evangelical Christian standards, including the church's express pro-life mission. *See* 5-ER-760; 5-ER-789–90. The State has not shown how its interest is furthered by facilitating access to abortion services for individuals who object to the use of those services on religious grounds.

16

### 3.   SB 6219 is not narrowly tailored.

SB 6219 is not narrowly tailored because the State of Washington could achieve the goal of ensuring abortion coverage through different means. If Washington "can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881.

The State has not shown that forcing churches like Cedar Park to violate their religious beliefs is the least restrictive means of achieving any relevant goal. The State has already demonstrated that it can provide exemptions for some healthcare providers and religiously-sponsored plans. There is no reason it cannot do the same for religious employers like Cedar Park. Further, if its interest is truly in providing all citizens with abortion coverage, the State could provide funds for such services directly compelling objecting religious employers to pay for or be complicit in the provision of such coverage through their insurers. Because the State could achieve its asserted interest through different, less restrictive means, it cannot satisfy strict scrutiny.

## II.   Allowing burdens on churches' free exercise in these circumstances would draw *Smith*'s validity into question.

The district court held that SB 6219 survived rational basis review and was not required to satisfy a more demanding standard because it is

facially neutral and generally applicable. 1-ER-017; 1-ER-020. It cannot be that the United States Constitution allows Washington to require religious groups to participate in a practice so fundamentally in conflict with their religious beliefs. If there is any chance that SB 6219 survives under the Supreme Court's decision in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), then *Smith* should be re-examined to avoid continued harm to the first freedom of the Bill of Rights.

A majority of sitting Supreme Court Justices have already expressed doubts about *Smith*. In his *Fulton* concurrence, Justice Alito, joined by Justices Thomas and Gorsuch, explained that *Smith*'s "severe holding is ripe for reexamination" for its failure to provide protection even if a rule lacks an important purpose and has a "devastating effect on religious freedom." 141 S. Ct. at 1883 (Alito, J., concurring). Justice Barrett's concurrence, joined by Justice Kavanaugh, echoed Justice Alito's doubts about *Smith*, expressing reservation about overruling *Smith* chiefly out of concern for what would replace it. *Id.* at 1882–83 (Barrett, J., concurring). Finally, Justice Gorsuch's concurrence expressed frustration that the Court did not overrule *Smith* in *Fulton*,

18

asking "what are we waiting for?" *Id.* at 1931 (Gorsuch, J., concurring). A decision against Cedar Park would be yet another reason to replace the *Smith* regime.

## CONCLUSION

For the reasons stated above, the Court should reverse the decision of the district court.

19

November 29, 2023

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Megan Lacy Owen
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
njfrancisco@jonesday.com

Eric C. Rassbach
The Hugh and Hazel Darling
Foundation Religious Liberty
Clinic
Pepperdine Caruso School of Law
24255 Pacific Coast Highway
Malibu, CA 90263
(310) 506-4611
eric.rassbach@pepperdine.edu

*Counsel for* Amici Curiae

# CERTIFICATE OF COMPLIANCE

I hereby certify that this *amicus* brief complies with Federal Rule of Appellate Procedure 29(a)(5) because it contains 3,381 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).

The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in 14-point Century Schoolbook, a proportionally spaced font.

Dated: November 29, 2023      */s/ Noel J. Francisco*
                                       Noel J. Francisco

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 29, 2023. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

Dated: November 29, 2023            */s/ Noel J. Francisco*
                                    Noel J. Francisco