# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,

*Plaintiff-Appellant / Cross-Appellee*,

v.

MYRON KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington, AKA Mike Kreidler; JAY ROBERT INSLEE, in his official capacity as Governor of the State of Washington,

*Defendants-Appellees / Cross-Appellants*.

On Appeal from the United States District Court
for the Western District of Washington
Civil Case No. 3:19-cv-05181-BHS

## REPLY SUPPORTING APPELLANT/CROSS-APPELLEE'S MOTION TO SUPPLEMENT THE RECORD

KRISTEN K. WAGGONER
JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
kwaggoner@ADFlegal.org
jbursch@ADFlegal.org

JAMES A. CAMPBELL
KEVIN H. THERIOT
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85250
(480) 444-0020
jcampbell@ADFlegal.org
ktheriot@ADFlegal.org

DAVID A. CORTMAN
RORY T. GRAY
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd., NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org
rgray@ADFlegal.org

*Counsel for Plaintiff-Appellant / Cross-Appellee*

Washington's response admits the Court *may* supplement the record. Resp.1–3. It merely argues the Court *shouldn't* for five reasons, none of which have merit. Resp.1–4. Accordingly, Cedar Park respectfully asks this Court to grant the motion to supplement.

First, Washington says the church should have submitted evidence regarding "whether—*after the summary judgment record closed*—Cedar Park continued to search for an abortion-excluding group plan" and whether "an abortion-excluding plan [is] available to Cedar Park now," Mot.5 (emphasis added), "*in connection with its summary judgment motion,*" Resp.1 (emphasis added). That's illogical, effectively demanding that Cedar Park foretell future health plan availability, search efforts and results, and contract terms.

Before the summary judgment record closed, Cedar Park didn't know upcoming health-plan availability or what its future policy language would look like. Nor could its insurance broker, Ms. Hansen, testify to searches for abortion-free plans that hadn't yet happened or describe their unrealized results. In short, Washington's argument supports granting the motion to supplement, not denying it.

Second, Washington says Cedar Park hasn't shown "extraordinary circumstances" for supplementing the record. Resp.2. That's incorrect. Appellate courts "traditionally … determin[e] … past or present facts based … exclusively upon a *closed trial [court] record.*" *Brown v. Plata*, 563 U.S. 493, 555 (2011) (Scalia, J., dissenting) (emphasis added); *accord United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("Generally, we will not consider facts outside the record developed before the district court."). Yet at oral argument, the Court questioned whether "Cedar Park continued to search for an abortion-excluding group plan" after the district court record closed and whether one "might be available to Cedar Park now that was unavailable before." Mot.5.

Following the Court's lead, Cedar Park obtained current information from its insurance broker and moved to supplement the record. Mot.5–6. And that was clearly proper, as litigants must "supplement the record in any manner necessary to enable [courts] to address with as much precision as possible any" jurisdictional questions "that may be raised." *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988).

Third, Washington says "the issue is not whether the case is moot, but whether Cedar Park met its burden of proving it suffered injury-in-fact *at the time of summary judgment*." Resp.3 (emphasis added). That's mistaken. "[E]vidence relevant to the standing inquiry consists of the *facts as they existed at the time [Cedar Park] filed the complaint*." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008) (quotation omitted; emphasis added). The standing timeframe doesn't change, although "the manner and degree of evidence required" to show standing does as the case advances through "successive stages of … litigation." *Id.* (quotation omitted).

Washington's theory that Cedar Park lacked an "injury-in-fact *at the time of summary judgment*," Resp.3 (emphasis added), relates "to changing circumstances that arise after the complaint is filed," a "[m]ootness" issue. *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). Put differently, Washington claims "the issues presented [were] no longer live" at the summary judgment stage, so Cedar Park "lack[s] a legally cognizable interest"—a classic "moot[ness]" theory. *Id.* at 1011 (quotations omitted). Because Washington's real concern is mootness and it concedes "that *consideration of new facts may be*

*mandatory* when" courts decide whether later "events render a controversy moot," Resp.2 (emphasis added; quotation omitted), the motion to supplement should be granted.

Moreover, Washington's representation, in its briefing and at oral argument, that Cedar Park currently has access to an abortion-excluding health plan *is* an attempt to add new facts to the trial court record. *But see Russell v. Cunningham*, 233 F.2d 806, 809 (9th Cir. 1956) (rejecting parties using "briefs … to bring before th[e] Court facts outside the record made below"). Yet Washington tries to stop Cedar Park from responding by moving to supplement the record with a declaration showing that representation is false. Washington can't have it both ways; either both sides' new facts come in or neither's do.

Fourth, Washington characterizes Ms. Hansen's declaration as "vague," "conclusory," and doubtful. Resp.3. None of that is true. This Court held in *Skyline Wesleyan Church v. California Department of Managed Health Care*, 968 F.3d 738, 748 (9th Cir. 2020), that when states eliminate churches' abortion-free health plans, those churches aren't required to accept "alternatives [that] would be a worse fit for [their] needs." So Cedar Park's search for a replacement plan that

excludes abortion *and* "meets the needs of … employees who have ongoing serious illnesses" is legitimate. Resp.3.

Nor is what the declaration "means" doubtful. Resp.3. Ms. Hansen "submit[ted] [it] *as a supplement* to [her] June 13, 2020, and April 4, 2023, declarations in this case." Decl. of Jami Hansen in Supp. of Appellant's Mot. to Supp. the Record (Decl.) at 1 (emphasis added). And the latter clarifies that, post-SB 6219, self-insurance is Cedar Park's only abortion-free option. 2-ER-65–66. But self-insurance isn't a viable option for Cedar Park, Ms. Hansen said, due to high-dollar claims by employees and family members with serious illnesses. 2-ER-65–67.

Specifically, Ms. Hansen said that "Cedar Park had a covered person spend upwards of $1,000,000" in "the 2019–20 plan year" and "claims exceeding $1,840,000 for one of Cedar Park's employee's children in plan years from 2019 through 2021." 2-ER-66–67. So Cedar Park might "not even be able to get the Stop Loss Insurance needed for a self-insurance plan" to work. 2-ER-67. Regardless, Ms. Hansen testified a self-insured plan's cost would skyrocket by "an additional $200,000" the "second year" and "an additional $200,000" in "year three" due to big-ticket claims. 2-ER-67.

The upshot is that Cedar Park can't self-insure and care for enrollees with serious illnesses, so Ms. Hansen's search results don't include those plans. Decl.1. That's not a jurisdictional problem. Self-insurance's exponentially higher costs makes it "a worse fit for [Cedar Park's] needs than having a [state]-regulated [group] plan"—thus, it's not an alternative Cedar Park must consider. *Skyline*, 968 F.3d at 748.

Finally, Washington says Ms. Hansen's declaration "provides no new information" and is "simply not relevant." Resp.5. These claims are belied by Washington's strident opposition to the motion. Moreover, "[a]t oral argument, this Court questioned whether—after the summary judgment record closed—Cedar Park continued to search for an abortion-excluding group plan" and "suggested that an abortion-excluding plan might be available to Cedar Park now that was unavailable before." Mot.5. So Cedar Park requested up-to-date information from its insurance broker, Ms. Hansen.

That conversation resulted in a declaration from Ms. Hansen presenting new facts that will enable the Court to address Washington's jurisdictional cross-appeal with "precision." *Pennel*, 485 U.S. at 8.

- For over five years and up to the present day, Ms. Hansen regularly searches for an abortion-free plan comparable to the one Cedar Park lost when SB 6219 took effect. Decl.1.

- Ms. Hansen's regular and ongoing searches are thorough and include inviting up to eight carriers to bid. Decl.1.

- Ms. Hansen's regular and ongoing searches haven't found a health plan comparable to the one Cedar Park lost when SB 6219 took effect (*i.e.*, an abortion-free plan the church qualifies for that isn't cost prohibitive and can accommodate high-value claims by seriously ill enrollees). Decl.1.

- Cedar Park's current health plan, which began September 1, 2024, includes objectionable abortion coverage. Decl.1.

## CONCLUSION

For these reasons and those outlined in the motion, Cedar Park respectfully requests that this Court grant the motion to supplement the record with the Hansen declaration.

Date: September 27, 2024        Respectfully submitted,

*/s/ Rory T. Gray*

DAVID A. CORTMAN              KRISTEN K. WAGGONER
RORY T. GRAY                  JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM    ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd, NE    440 First Street, NW
Suite D-1100                  Suite 600
Lawrenceville, GA 30043      Washington, DC 20001
(770) 339-0774             (202) 393-8690
dcortman@ADFlegal.org      kwaggoner@ADFlegal.org
rgray@ADFlegal.org          jbursch@ADFlegal.org

                            JAMES A. CAMPBELL
                            KEVIN H. THERIOT
                            ALLIANCE DEFENDING FREEDOM
                            15100 N. 90th Street
                            Scottsdale, AZ 85260
                            (480) 444-0020
                            jcampbell@ADFlegal.org
                            ktheriot@ADFlegal.org

*Counsel for Appellant/Cross-Appellee*

## CERTIFICATE OF COMPLIANCE

This reply complies with the requirements of Fed. R. App. P. 27(d) and 9th Circuit Rule 27-1(1)(d) because it does not exceed 10 pages.

This reply also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Rory T. Gray*
Rory T. Gray
*Counsel for Plaintiff/Cross-Appellee*

Dated: September 27, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Reply Supporting the Motion to Supplement the Record with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate CM/ECF system on September 27, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF system.

*/s/ Rory T. Gray*
Rory T. Gray
*Counsel for Appellant/Cross-Appellee*