# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,
*Plaintiff-Appellant/Cross-Appellee*,

v.

PATRICIA KUDERER, in her official capacity as Insurance
Commissioner for the State of Washington; ROBERT FERGUSON, in
his official capacity as Governor of the State of Washington,
*Defendants-Appellees/Cross-Appellants*.

---

On Appeal from the United States District Court
for the Western District of Washington
No. 3:19-cv-05181-BHS (Hon. Benjamin H. Settle)

---

## BRIEF OF *AMICI CURIAE*
## CHRISTIAN LEGAL SOCIETY
## AND THE BECKET FUND FOR RELIGIOUS LIBERTY
## SUPPORTING PETITION FOR REHEARING EN BANC

---

Eric C. Rassbach
The Hugh and Hazel Darling
Religious Liberty Clinic
Pepperdine University
Caruso School of Law
24255 Pacific Coast Hwy.
Malibu, CA 90263
Telephone: (310) 506-4611
eric.rassbach@pepperdine.edu

Noel J. Francisco
Christopher C. Pagliarella
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3404
Facsimile: (202) 626-1700
njfrancisco@jonesday.com

*Counsel for* Amici Curiae

*Public-officer defendants substituted in caption pursuant to FRAP 43(c)(2).*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* Christian Legal Society states that it is not a publicly held corporation, does not issue stock, and does not have a parent corporation.

*Amicus curiae* The Becket Fund for Religious Liberty likewise states that it is not a publicly held corporation, does not issue stock, and does not have a parent corporation.

*/s/ Noel J. Francisco*
Noel J. Francisco

*Counsel for* Amici Curiae
*Christian Legal Society and*
*The Becket Fund for*
*Religious Liberty*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT............................................i

TABLE OF AUTHORITIES....................................................................iii

INTEREST OF *AMICI CURIAE*............................................................ 1

SUMMARY OF ARGUMENT ................................................................. 3

ARGUMENT ......................................................................................... 4

I.   The panel's standing ruling contradicts Supreme Court
     precedent. ................................................................................. 4

     A.   A plaintiff has standing where, as here, a government
          policy coerces it to abandon the dictates of its faith-
          formed conscience.................................................................5

     B.   The panel's justification for holding that Cedar Park
          lacked standing impermissibly re-evaluates a plaintiff's
          conception of its faith's requirements.....................................9

II.  The panel's ruling shields at least four separate Free
     Exercise Clause violations from review....................................... 12

     A.   SB 6219's system of individualized exemptions triggers
          strict scrutiny. ................................................................... 12

     B.   SB 6219 triggers strict scrutiny by treating comparable
          secular activity better than churches' religious activity..... 15

     C.   SB 6219 includes categorical exemptions that do not
          extend to religious organizations, triggering strict
          scrutiny................................................................................ 16

     D.   SB 6219 is subject to strict scrutiny because it targets
          churches' religious activity for special disfavor.................. 18

     E.   SB 6219 cannot withstand strict scrutiny............................ 20

CONCLUSION ..................................................................................... 22

CERTIFICATE OF COMPLIANCE....................................................... 24

CERTIFICATE OF SERVICE............................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ...................................................... 3, 5, 6, 9, 10, 11

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ...................................................... 5, 16, 18, 19, 21

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ............................................................................ 21

*Davis v. FEC*,
554 U.S. 724 (2008) .............................................................................. 7

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ...................................................................... 5, 7, 9

*Doremus v. Bd. of Educ. of Borough of Hawthorne*,
342 U.S. 429 (1952) ............................................................................ 11

*Emp. Div. v. Smith*,
494 U.S. 872 (1990) ............................................................................ 10

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ...................................................................... 11, 12

*Fellowship of Christian Athletes v. San Jose Unified Sch.
Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023) .................................. 4, 13, 14, 15, 16, 18

*Foothill Church v. Watanabe*,
3 F.4th 1201 (9th Cir. 2021) ............................................................. 14

*Foothill Church v. Watanabe,*
     623 F. Supp. 3d 1079 (E.D. Cal. 2022) ............................................... 14

*Fulton v. City of Philadelphia,*
     593 U.S. 522 (2021) ...................................................... 13, 14, 16, 21, 22

*Hobby Lobby Stores, Inc. v. Sebelius,*
     723 F.3d 1114 (10th Cir. 2013) (en banc) ................................. 8, 10, 12

*Kennedy v. Bremerton Sch. Dist.,*
     597 U.S. 507 (2022) ............................................................................... 6

*Korte v. Sebelius,*
     735 F.3d 654 (7th Cir. 2013) ................................................................. 8

*Little Sisters of the Poor Saints Peter & Paul Home v.*
     *Pennsylvania,*
     591 U.S. 657 (2020) ............................................................................... 3

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n,*
     584 U.S. 617 (2018) ................................................................. 18, 19, 20

*Paroline v. United States,*
     572 U.S. 434 (2014) ............................................................................... 7

*Priests For Life v. HHS,*
     772 F.3d 229 (D.C. Cir. 2014) .............................................................. 8

*Spokeo, Inc. v. Robins,*
     578 U.S. 330 (2016) ............................................................................... 5

*Tandon v. Newsom,*
     593 U.S. 61 (2021) (per curiam) ........................................ 15, 16, 17, 21

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.,*
     450 U.S. 707 (1981) ......................................................................... 6, 10

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) .................................................................. 5

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
582 U.S. 449 (2017) .................................................................. 6

*United States v. Lee,*
455 U.S. 252 (1982) ................................................................ 10

*Wieland v. HHS,*
793 F.3d 949 (8th Cir. 2015) ................................................... 9

**STATUTES**

26 U.S.C. § 4980D ....................................................................... 9

Further Consolidated Appropriations Act,
Pub. L. No. 118-47, 138 Stat. 460 (2024) ............................. 13

RCW § 48.43.005 ................................................................. 16, 17

RCW § 48.43.065 ............................................................ 12, 17, 19

RCW § 48.43.073 .............................................................. 7, 13, 17

**OTHER AUTHORITIES**

Mark Markovich, *Inslee to Veto Abortion Insurance Bill,*
Komo News (Mar. 5, 2018) ..................................................... 20

*SB 6219 - 2017-18*, Washington State Legislature ................... 20

# INTEREST OF *AMICI CURIAE*[1]

Christian Legal Society (CLS) is a nondenominational association of Christian attorneys, law students, and law professors. Its advocacy arm, the Center for Law & Religious Freedom, defends religious liberty and the sanctity of human life, and thus has a deep interest in this case. CLS has long believed that pluralism, essential to a free society, prospers only when all Americans' First Amendment rights are protected.

The Becket Fund for Religious Liberty is a nonprofit, nonpartisan law firm dedicated to protecting the free expression of all religious traditions. It has represented agnostics, Buddhists, Christians, Hindus, Jews, Muslims, Native Americans, Santeros, Sikhs, and Zoroastrians, among others, in lawsuits across the country and around the world. It is frequently involved, both as counsel of record and as *amicus curiae*, in cases seeking to preserve the freedom of all religious people to pursue their beliefs without excessive government interference.

---

[1] All parties have consented to the filing of this brief. No party's counsel authored this brief in part or in whole, and no person (other than *amici*, their members, and their counsel) has contributed money to fund the preparation or submission of this brief.

*Amici* are concerned that if the panel's decision is left uncorrected, religious bodies throughout the Ninth Circuit will be unable to vindicate their rights in federal court.

## SUMMARY OF ARGUMENT

SB 6219 forces Cedar Park to make a choice. It must take an action that would violate the tenets of its faith: purchasing a health plan that all agree triggers coverage for abortion services. Or it could stop providing health insurance for its employees, a decision that would also contradict its beliefs and would expose it to hefty penalties. The panel nonetheless cast Cedar Park as a mere bystander raising only "general disapproval of the actions that others might decide to take." Op.21.

That was gross error and puts this Court in conflict with the Supreme Court. By characterizing the church's conscience injury as too "attenuated" from SB 6219, Op.22, the panel failed to "accept the sincerely held complicity-based objections of [a] religious entit[y]." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 681 (2020). Indeed, the Supreme Court has specifically rejected the "attenuated" argument embraced by the panel. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 723-24 (2014) (whether religious beliefs are "too attenuated" is a "question that the federal courts have no business addressing").

The panel's standing decision allowed it to dodge the plain Free Exercise Clause violation here. This Court, sitting en banc, recently "[d]istilled" Supreme Court authority into a straightforward framework for evaluating Free Exercise Clause claims like Cedar Park's. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023) (*FCA*). SB 6219 violates each "bedrock requirement[]" of the Free Exercise Clause that the "government may not transgress" without satisfying strict scrutiny. *Id.* It provides for discretionary individualized exemptions; treats comparable secular activity more favorably than Cedar Park's religious activity; provides a whole host of categorical exemptions to secular health plans; and reflects hostility toward religion. *See id.* And as for strict scrutiny, SB 6219 advances no compelling government interest, let alone through narrowly tailored means. This Court should therefore grant rehearing.

## ARGUMENT

### I. The panel's standing ruling contradicts Supreme Court precedent.

In concluding that Cedar Park lacked standing, the panel contradicted several principles set forth in Supreme Court precedent. It bypassed the Supreme Court's repeated declarations that free-exercise

harms are concrete injuries in fact. *See, e.g., TransUnion LLC v. Ramirez,* 594 U.S. 413, 425 (2021). It ignored the Supreme Court's statement that "*de facto* causality" suffices for standing. *Dep't of Com. v. New York,* 588 U.S. 752, 768 (2019). And it flouted the Supreme Court's admonition that "federal courts have no business" deciding "that the connection between what the objecting parties must do … and the end that they find to be morally wrong … is simply too attenuated." *Hobby Lobby,* 573 U.S. at 723-24.

A. **A plaintiff has standing where, as here, a government policy coerces it to abandon the dictates of its faith-formed conscience.**

The Supreme Court has held that "traditional harms" that are sufficiently "concrete" to meet the injury-in-fact requirement "include harms specified by the Constitution itself," like the "infringement of free exercise." *TransUnion,* 594 U.S. at 425 (citing *inter alia Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016), and *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993)). After all, the Constitution "protect[s] the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (or abstention

from) physical acts." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quotation marks omitted).

Indeed, plaintiffs suffer cognizable conscience injuries not only from "outright prohibitions" on their acting (or not acting) as their faith requires. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017). They also experience those injuries when the government places "indirect coercion or penalties on the free exercise of religion," *id.*—including when it "compel[s]" them "to choose" between exercising their faith and receiving "an important benefit." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716-18 (1981).

Those same rules apply when a person's faith leads her to believe that "it is wrong … to perform an act" that would "facilitat[e] the commission of an immoral act by another." *Hobby Lobby*, 573 U.S. at 724. When the government forces persons to help others commit an immoral act, contrary to their faith, it "demands that they engage in conduct that seriously violates their religious beliefs"—the same injury as if the government demanded that they commit the wrongful act themselves. *See id.* at 720.

With the concrete injury here well established, two standing requirements remain: causation and redressability. Standing "requires no more than *de facto* causality." *Dep't of Com.*, 588 U.S. at 768; *see also Paroline v. United States*, 572 U.S. 434, 449-50 (2014) ("The traditional way to prove that one event was a factual cause of another is to show that the latter would not have occurred 'but for' the former."). And for redressability, a plaintiff need only show that its injury is "likely to be redressed by a favorable ruling." *Davis v. FEC*, 554 U.S. 724, 733 (2008).

Here, Cedar Park asserts that its religious beliefs forbid it from "facilitating abortion in any way, including through—or as a result of—purchasing an employee health plan." Third Br. of Appellant/Cross-Appellee 18; *accord* 5-ER-768. Washington does not dispute that belief's sincerity. And the panel itself explained that SB 6219 leads to the result Cedar Park's beliefs forbid, through a couple predictable steps. First, the Affordable Care Act (ACA) "requires employers like" Cedar Park "to provide health insurance that includes maternity coverage." Op.10. SB 6219, "in turn, requires health plans that provide maternity coverage to provide 'substantially equivalent coverage to permit [an] abortion.'" *Id.* (quoting RCW § 48.43.073(1)(a)). Employees obtain that coverage

"whether or not the employer has a religious objection," Op.21, because, if an employer objects, employees "have the right to obtain such coverage through their insurers," Op.20 (emphasis omitted). These two commands' "practical effect" is thus to require almost "all Washington employers … covered by the [ACA] to provide coverage for abortion services." Op.10. Conversely, should a court enjoin SB 6219's application to Cedar Park, the church would no longer necessarily provide abortion coverage by giving its employees ACA-compliant insurance.[2] Cedar Park's standing should therefore be "beyond question." *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1154 (10th Cir. 2013) (en banc) (Gorsuch, J., concurring).

The panel's conclusion otherwise presents a host of problems. The panel created a split with circuits that have recognized that plaintiffs have standing to challenge laws requiring them "to take an action"— providing coverage for services they object to—"that they contend substantially burdens their religious exercise." *Priests For Life v. HHS*, 772 F.3d 229, 243-44 (D.C. Cir. 2014); *see also Korte v. Sebelius*, 735 F.3d

---

[2] The panel did not identify any redressability problem under Cedar Park's indirect-facilitation theory. Op.21-24.

654, 667-68 (7th Cir. 2013); *Wieland v. HHS*, 793 F.3d 949, 953-57 (8th Cir. 2015). It overlooked that Cedar Park faced substantially the same coercive pressures—"penalties" and "religious reasons for providing health-insurance coverage for [its] employees"—that the Supreme Court has acknowledged can lead such a law to burden employers' religious exercise. *See Hobby Lobby*, 573 U.S. at 720-21; *see also* 26 U.S.C. § 4980D; 5-ER-769. And the panel did so despite its admission that Cedar Park had premised standing on "but-for reasoning," Op.21, which should suffice to establish causation. *See Dep't of Com.*, 588 U.S. at 768. Those problems alone should lead this Court to rehear this case.

### B. The panel's justification for holding that Cedar Park lacked standing impermissibly re-evaluates a plaintiff's conception of its faith's requirements.

Yet another problem, though, jumps out from the panel's reasoning. To reach its standing conclusion, the panel contradicted Supreme Court religious-liberty doctrine by opining that the connection between the required conduct—providing health coverage—and the wrongful act facilitated—an employee obtaining an abortion—was too "attenuated." Op.22. That reasoning commits an error that the Supreme Court has "[r]epeatedly and in many different contexts" warned judges to avoid.

*Emp. Div. v. Smith*, 494 U.S. 872, 887 (1990). Judges should not "dissect religious beliefs," *Thomas*, 450 U.S. at 715, assess "the plausibility of a religious claim," *Smith*, 494 U.S. at 887, and dictate which actions are "simply too attenuated" to violate someone's faith, *see Hobby Lobby*, 573 U.S. at 723-25. When a person's faith leads him to "dr[a]w a line" on what actions he cannot take, courts cannot declare that line "was an unreasonable one." *Thomas*, 450 U.S. at 715. So it makes no difference that, ultimately, "employees could choose for themselves" whether to obtain an abortion. *Hobby Lobby*, 723 F.3d at 1153 (Gorsuch, J., concurring) (discussing *United States v. Lee*, 455 U.S. 252 (1982)). *Contra* Op.22 (emphasizing that Washington law "establishes … employees' individual right to choose to have an abortion"). Whether it is wrong for an employer to do something that it believes would facilitate an abortion is itself a matter of religious teaching "not within 'the judicial function and competence'" to question. *Hobby Lobby*, 723 F.3d at 1153 (Gorsuch, J., concurring) (citing *Lee*, 455 U.S. at 257).

Nor does it matter that the employees so facilitated subscribe to the same beliefs. *Contra* Op.24. Could the government escape judicial oversight if it were to force a person whose faith teaches against alcohol

consumption to provide liquor to his fellow teetotalers? Or a religious school to offer contraceptives to students who agreed to follow its faith-based sexual-conduct policy? Of course not: Again, the very act of possibly facilitating the wrongful conduct—not just the conduct itself—infringes those persons' faith-formed consciences.

In that way, this case differs from those the panel invoked. The panel relied on a taxpayer-standing case, *Doremus v. Bd. of Educ. of Borough of Hawthorne*, 342 U.S. 429 (1952), to suggest that plaintiffs need more than a religious "motivation" to sue. Op.22. But Cedar Park has more. Unlike the *Doremus* plaintiffs, its "religious practices have been interfered with" and its "right to worship in accordance with the dictates of [its] conscience has been suppressed." 342 U.S. at 431; *see also Hobby Lobby*, 573 U.S. at 726 (distinguishing tax cases where challengers "never articulated a *religious* objection"). So too for *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). There, the plaintiff doctors said that they might "be required—against their consciences—to render … abortion-related treatment." *Id.* at 387. In rejecting that standing theory, the Supreme Court *confirmed* that such "a conscience injury" would be "concrete," but concluded that federal law "definitively"

protected the plaintiffs "from being required" to provide such treatment. *Id.* at 387-90.

Here, in contrast, state law creates Cedar Park's injury by commanding that its objection "shall not result in an [employee] being denied coverage" for an abortion. RCW § 48.43.065(3)(b); *see* Op.20. Cedar Park thus asserts more than a "desire to make [abortion] less available for others." *FDA*, 602 U.S. at 374 (emphasis omitted). It claims the personal injury of being forced to provide abortion coverage contrary to its sincerely held religious beliefs.

At bottom, Washington requires some employers like Cedar Park "to lend what their religion teaches to be an impermissible degree of assistance to the commission of what their religion teaches to be a moral wrong. This sort of governmental pressure to compromise an article of religious faith is surely sufficient to convey Article III standing[.]" *Hobby Lobby*, 723 F.3d at 1154 (Gorsuch, J., concurring).

## II. The panel's ruling shields at least four separate Free Exercise Clause violations from review.

### A. SB 6219's system of individualized exemptions triggers strict scrutiny.

Laws that substantially burden religion and permit "individualized exemptions" are subject to strict scrutiny, even if the government has

never issued such an exemption. *Fulton v. City of Philadelphia*, 593 U.S. 522, 533, 537 (2021); *see FCA*, 82 F.4th at 685-86. In *Fulton*, Philadelphia's "sole discretion" to grant exceptions from a nondiscrimination provision was a "system of individual exemptions" rendering the provision not generally applicable. 593 U.S. at 535. This Court in *FCA* explained that *Fulton* holds "the mere existence of a discretionary mechanism to grant exemptions can be sufficient to render a policy not generally applicable, regardless of the actual exercise." 82 F.4th at 687-88.

SB 6219 permits just such individualized exemptions. The federal Weldon Amendment restricts federal funding to States that "discriminat[e] on the basis that [a] health care entity does not provide, pay for, provide coverage of, or refer for abortions." Further Consolidated Appropriations Act, Pub. L. No. 118-47, § 507(d)(1), 138 Stat. 460, 703 (2024). SB 6219 expressly limits application of the abortion mandate to avoid violating federal-funding requirements. *See* RCW § 48.43.073(5). But instead of a formal process to determine exemptions, the Office of the Insurance Commissioner (OIC) exercises case-by-case discretion to address potential Weldon Amendment issues. *See* ECF No. 103-1 at 7,

No. 3:19-cv-05181-BHS (W.D. Wash.) ("[B]ecause the language of the savings clause in SB 6219 requires an exemption 'to the minimum extent possible,' the OIC has authority and discretion to choose how to implement this exemption."). As in *FCA*, "case-by-case" discretion forecloses finding "a generally applicable policy." 82 F.4th at 688.

This Court recently directed a district court to consider a similar mandate and individualized exemption scheme under *Fulton*. *See Foothill Church v. Watanabe*, 3 F.4th 1201, 1201 (9th Cir. 2021). On remand, the district court found that California's abortion-coverage mandate could not withstand strict scrutiny. *Foothill Church v. Watanabe*, 623 F. Supp. 3d 1079, 1093-94 (E.D. Cal. 2022). There, the director of California's Department of Managed Health Care had the discretion to render plans exempt from the mandate, without "written rules, policies, or procedures" governing that request. *Id.* at 1087. Here, the OIC's similar discretion subjects SB 6219 to strict scrutiny.

**B.    SB 6219 triggers strict scrutiny by treating comparable secular activity better than churches' religious activity.**

SB 6219 is also subject to strict scrutiny because it provides exemptions to comparable categories of secular health plans, treating those plans more favorably than Cedar Park's religious activity.

"[W]hether two activities are comparable [under] the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam). In *Tandon*, California's restriction on at-home worship was not neutral and generally applicable, as it exempted comparable activities at places like hair salons, movie theaters, and restaurants. *Id.* at 63. The Court emphasized that "[c]omparability is concerned with the *risks* various activities pose, not the reasons why people gather." *Id.* at 62 (emphasis added). Similarly, in *FCA*, a school district excluded a school club with a statement of faith and sexual purity based on an interest in equal access, but undermined that interest by permitting secular groups to discriminate (*e.g.*, on gender). 82 F.4th at 689. This "acceptance of comparable selective secular organizations" triggered strict scrutiny. *Id.* at 689-90.

That rule applies here. Washington exempts various insurance plans from the abortion mandate, including short-term, limited-purpose plans that would otherwise be under the mandate because they provide maternity and contraceptive coverage. RCW § 48.43.005(33). But the allowance for such plans exempts "secular conduct that undermines the government's asserted interest[] in a similar way." *Fulton*, 593 U.S. at 534. SB 6219 is therefore not generally applicable under *Tandon* and *FCA* and is subject to strict scrutiny.

### C. SB 6219 includes categorical exemptions that do not extend to religious organizations, triggering strict scrutiny.

Relatedly, SB 6219 is also not generally applicable because of its broad categorical exemptions. "[C]ategories of selection are of paramount concern when a law has the incidental effect of burdening religious practice." *Lukumi*, 508 U.S. at 542. Where a categorical exemption threatens the government's interest "in a similar or greater degree than [the prohibited religious exercise] does," it must face strict scrutiny. *Id.* at 543. So government regulations are not neutral and generally applicable—triggering strict scrutiny—"whenever they treat *any*

comparable secular activity more favorably than religious exercise."
*Tandon*, 593 U.S. at 62.

Here, the asserted government interest supporting SB 6219 is undermined by multiple categorical exemptions. As discussed, Washington law exempts numerous types of insurance plans from its definition of "health plan." RCW § 48.43.005(33). In addition, SB 6219 provides an exemption to the abortion mandate if necessary to avoid violating federal conditions on state funding and exempts plans that do not provide comprehensive maternity coverage. *See* RCW § 48.43.073(1)(a), (5). And Washington's provision for conscience protection exempts religiously sponsored health carriers from the abortion-coverage requirement. *See* RCW § 48.43.065(2). If exempting religious employers like Cedar Park from the mandate undermines Washington's interest in protecting women's access to reproductive health care, that interest is similarly undermined by exempting other plans that provide maternity coverage, plans provided by religiously sponsored health carriers, or plans that do not include comprehensive maternity coverage.

**D. SB 6219 is subject to strict scrutiny because it targets churches' religious activity for special disfavor.**

When the government makes an "improper attempt to target [a religion][,]" strict scrutiny is triggered. *Lukumi*, 508 U.S. at 534-35. Such improper targeting can appear as open animus toward religion or special burdens on religious exercise. *See id.* Both are present here.

This Court in *FCA* observed open animus in hostile statements describing religious beliefs as "choos[ing] darkness" and "twisting the truth." 82 F.4th at 692. Likewise, public-official comments that cast "doubt on the [government's] fairness and impartiality" qualify as animus triggering strict scrutiny. *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 636 (2018).

But while animus is sufficient to show improper targeting of religion, it is not necessary; "even 'subtle departures from neutrality'" violate the Free Exercise Clause. *FCA*, 82 F.4th at 686 (quoting *Lukumi*, 508 U.S. at 534). Courts look for targeting in a statute's "text" and its "effect" "in its real operation." *Lukumi*, 508 U.S. at 535. They further examine "historical background," including the "series of events leading to" the policy, and "legislative or administrative history, including contemporaneous statements made by members of the decisionmaking

body." *Masterpiece*, 584 U.S. at 639. In *Lukumi*, the obvious effect of a law prohibiting "unnecessary" animal killings on Santería religious exercise demonstrated improper targeting, even absent hostile commentary. 508 U.S. at 537-38. And impermissible effects can appear in the "differential treatment of two religions" as much as in the differential treatment of religion and secular activity. *Id.* at 536.

SB 6219's unique burdens on churches demonstrate targeting. The contrast is evident even in comparison to other religious actors. Healthcare providers, religiously sponsored health carriers, and healthcare facilities may not be required "in any circumstances to participate in the provision of or payment for a specific service if they object to so doing for reason of conscience or religion." RCW § 48.43.065(2)(a). But churches like Cedar Park lack that protection. *See* RCW § 48.43.065(3). Its health plan must still include "coverage of, and timely access to," any services "excluded from [employees'] benefits package as a result of [its] ... exercise of the conscience clause," even if Cedar Park does not "purchase" that coverage directly. RCW § 48.43.065(3)(a), (b). So Cedar Park must facilitate access to objected-to services by facilitating access to a health plan providing those services.

Further, while animus is not required to establish targeting, Washington's special disfavor for Cedar Park's religious exercise is also evident in "contemporaneous statements made by members of the decisionmaking body" and legislative proceedings. *Masterpiece Cakeshop*, 584 U.S. at 639. In the process of drafting, passing, and implementing SB 6219, Washington legislators demonstrated that they were aware of, and intended, the law's burdens on religious organizations. Proposed amendments to exempt religious organizations were rejected. *See SB 6219 - 2017-18*, Washington State Legislature, https://tinyurl.com/ycx6nup2. SB 6219's sponsor dismissed religious organizations' objections to the burdens on their faith: "Health care is about the individual, not about them [religious organizations]." Mark Markovich, *Inslee to Veto Abortion Insurance Bill*, Komo News (Mar. 5, 2018), https://tinyurl.com/4vc5mw5u. Thus, the motivation behind SB 6219 was not "unclear" as the district court held. 1-ER-019. Such targeting triggers strict scrutiny.

### E. SB 6219 cannot withstand strict scrutiny.

Having triggered strict scrutiny in at least four separate ways, SB 6219 cannot possibly satisfy that standard, the "most demanding test

known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). Here, Washington cannot carry its burden to show its policy "advances interests of the highest order and is narrowly tailored to achieve those interests." *Fulton*, 593 U.S. at 541 (quotation marks omitted).

### 1. SB 6219 serves no compelling government interest.

The compelling interest test assesses "the asserted harm of granting *specific exemptions* to *particular religious claimants*." *Id.* (emphasis added). And when the government restricts religious conduct but fails "to restrict other conduct producing substantial harm or alleged harm of the same sort," the government's asserted interest is not compelling. *Lukumi*, 508 U.S. at 546-47; *see Tandon*, 593 U.S. at 63.

Here, by permitting broad categorical exemptions to the abortion mandate but refusing to grant Cedar Park an exemption, SB 6219 does exactly what the animal-slaughtering ordinances did in *Lukumi*. It restricts protected religious exercise while exempting other secular (and even some religious) conduct that produces the same "harm" to the government's asserted interest—demonstrating no compelling interest in the policy, and its application to the particular religious claimant here.

## 2. SB 6219 is not narrowly tailored.

SB 6219 is not narrowly tailored because Washington "can achieve its interests" in ensuring abortion coverage "in a manner that does not burden religion," and therefore "must do so." *Fulton*, 593 U.S. at 541.

Here, Washington has already demonstrated that it can provide exemptions for some healthcare providers and religiously sponsored plans. There is no reason it cannot do the same for religious employers like Cedar Park. Further, if its interest is truly in providing all citizens with abortion coverage, Washington could provide funds for such services without compelling objecting religious employers to pay for or be complicit in the provision of such coverage through their insurers. Because Washington could achieve its asserted interest through different, less restrictive means, it cannot satisfy strict scrutiny.

## CONCLUSION

This Court should grant rehearing en banc.

April 11, 2025

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Christopher C. Pagliarella
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
njfrancisco@jonesday.com

Eric C. Rassbach
The Hugh and Hazel Darling
Foundation Religious Liberty
Clinic
Pepperdine Caruso School of Law
24255 Pacific Coast Highway
Malibu, CA 90263
(310) 506-4611
eric.rassbach@pepperdine.edu

*Counsel for* Amici Curiae

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-35560, 23-35585

I am the attorney or self-represented party.

**This brief contains** | 3,909 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [ ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Noel J. Francisco | **Date** | 4/11/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 11, 2025. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

Dated: April 11, 2025

*/s/ Noel J. Francisco*
Noel J. Francisco