Nos. 23–35560, 23–35585
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,

*Plaintiff-Appellant/Cross-Appellee*,

v.

MYRON KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington, AKA Mike Kreidler; JAY ROBERT INSLEE, in his official capacity as Governor of the State of Washington,

*Defendants-Appellees/Cross-Appellants*.

On Appeal from the United States District Court
for the Western District of Washington; Civil Case No. 3:19–cv–05181–BHS

**BRIEF OF MONTANA PUBLIC POLICY CENTER, INC.
AS *AMICUS CURIAE* IN SUPPORT OF PETITION
FOR REHEARING EN BANC**

Emily Jones
JONES LAW FIRM, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
(406) 384-7990
*emily@joneslawmt.com*
  *Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Montana Public Policy Center, Inc. is a Montana non-profit corporation with no parent corporation or stockholders.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES .............................................................................. iii

INTEREST OF AMICUS CURIAE ..................................................................... 1

SUMMARY OF ARGUMENT ........................................................................... 1

ARGUMENT .................................................................................................... 3

   I.  HOW ARTICLE III STANDING APPLIES IN THIS CASE IS A QUESTION OF EXCEPTIONAL IMPORTANCE. ........................................ 4

   II.  REHEARING EN BANC IS NECESSARY TO MAINTAIN JURISPRUDENTIAL UNIFORMITY. ................................................................ 5

       A.  THE PANEL DECISION FAILED TO PROPERLY APPLY THE SUMMARY JUDGMENT STANDARD. ......................................................... 5

       B.  THE PANEL'S TRACEABILITY ANALYSIS DIRECTLY CONTRADICTS *SKYLINE*. ............................................................................ 8

       C.  THE PANEL'S REDRESSABILITY ANALYSIS FAILED TO APPLY ITS OWN PRECEDENT AND THAT OF OTHER CIRCUITS. ........................... 11

CONCLUSION .............................................................................................. 14

CERTIFICATE OF COMPLIANCE ................................................................... 15

# **TABLE OF AUTHORITIES**

CASES

*Behrend v. San Francisco Zen Ctr., Inc.*,
   108 F.4th 765 (9th Cir. 2024) ............................................................................5

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..........................................................................10, 11, 12

*Cantwell v. Connecticut*,
   310 U.S. 296 (1940) ..........................................................................................4

*Cedar Park Assembly of God v. Kreidler*,
   130 F.4th 757 (9th Cir. 2025) ................................................................ 3, 7, 10

*Cedar Park Assembly of God v. Kreidler*
860 Fed. App'x 542 (9th Cir. 2021) ....................................................................6

*Church of Lukumi Babalu Aye v. City of Hialeah*,
   508 U.S. 520 (1993) ..........................................................................................4

*Dep't of Commerce v. New York*,
   588 U.S. 752 (2019) ..................................................................................10, 11

*Edwards v. Wells Fargo & Co.*,
   606 F.3d 555 (9th Cir. 2010) ............................................................................5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ........................................................................................11

*Fulton v. City of Philadelphia*,
   593 U.S. 522 (2021) ..........................................................................................4

*Graham v. FEMA*,
   149 F.3d 997 (9th Cir. 1998) ..........................................................................11

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ..........................................................................................10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..................................................................................5, 7, 11

*Mendia v. Garcia*,
    768 F.3d 1009 (9th Cir. 2014) ...................................................................9

*Murthy v. Missouri*,
    603 U.S. 43 (2024)....................................................................................10

*Napouk v. Las Vegas Metro. Police Dep't*,
    123 F.4th 906 (9th Cir. 2024) ....................................................................7

*Renee v. Duncan*,
    686 F.3d 1002 (9th Cir. 2012) ......................................................11, 12, 13

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002)....................................................................7

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
    968 F.3d 738 (2020)...........................................................4, 5, 8, 9, 10, 11, 12

*VMG Salsoul, LLC v. Ciccone*,
    824 F.3d 871 (9th Cir. 2016) .....................................................................5

*Wash. Envtl. Council v. Bellon*,
    732 F.3d 1139 (9th Cir. 2013) .................................................................10

*Wieland v. United States Dep't of Health & Human Services*,
    793 F.3d 949 (8th Cir. 2015) ...................................................................13

STATUTES
Wash. Rev. Code § 48.43.065(3)(a)–(b)...................................................................2

RULES
Circuit Rule 29–2(a)..................................................................................................1

Fed. R. App. P. 29(a)(4)(E)………...…..................................................................1

Fed. R. App. P. 40(b)(2) ..........................................................................................4

## INTEREST OF AMICUS CURIAE

The Montana Public Policy Center, Inc. ("MPPC") is a nonprofit corporation that exists to promote public policy solutions providing increased access to economic opportunities and greater individual freedoms, and to encourage participation in public matters. MPPC has an interest in ensuring that the First Amendment's protection of religious freedom is upheld throughout the country, and that religious employers are not subjected to onerous laws that unconstitutionally restrict their religious autonomy and the free exercise of their religious beliefs.

Pursuant to Fed. R. App. P. 29(a)(4)(E), counsel for MPPC certifies that this Brief was not authored in whole or in part by counsel for any party and that no person or entity, other than MPPC, has made a monetary contribution to its preparation or submission. Pursuant to Circuit Rule 29–2(a), all parties have consented to this filing.

## SUMMARY OF ARGUMENT

Washington's Reproductive Parity Act ("Act") was expressly enacted to force health insurers who cover maternity care to also provide coverage for abortion services.[1] The Act codifies the Legislature's policy determination that "Restrictions

---

[1] The Act states, "if a health plan issued or renewed on or after January 1, 2019, provides coverage for maternity care or services, the health plan must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy."

1

on abortion coverage interfere with a woman's personal, private pregnancy decision making, with his or her health and well-being, and with his or her constitutionally protected right to safe and legal medical abortion care." This policy determination is based on a moral stance on so-called reproductive autonomy and equity, with a stated aim to ensure access to abortion and contraception as a matter of fairness, especially for marginalized groups.

The problem is that this moral stance conflicts with that of Cedar Park Assembly of God of Kirkland, Washington, and thousands of other religious organizations and institutions within this circuit who view abortion as morally wrong. Because Cedar Park is required by federal law to purchase an employee health plan, and because federal law requires those health plans to provide maternity care, the Act puts Cedar Park in the untenable position of forcing it to purchase an employee health plan that provides coverage for abortion, against its sincerely held religious beliefs.

Washington's conscience statute provides no relief to Cedar Park. While the conscience statute ostensibly gives Cedar Park the right to not purchase abortion coverage for its employee benefits package (*see* Wash. Rev. Code § 48.43.065(3)(a)–(b)), as the dissent noted, it "*does not* allow insurers to exclude abortion coverage from Cedar Park's 'health plan' and the Parity Act mandates inclusion of such coverage." *Cedar Park Assembly of God v. Kreidler*, 130 F.4th

2

757, 2025 U.S. App. LEXIS 5247, *45 (9th Cir. 2025) ("*Cedar Park II*") (emphasis in the original). Cedar Park therefore has no meaningful way to avail itself of the conscience statute to avoid paying premiums for abortion coverage.

Cedar Park's petition for rehearing en banc presents a question of exceptional importance: do religious organizations have Article III standing to challenge laws that force insurers to equate abortion with maternity care in employee health plans? Under this Court's prior precedents, the answer is yes. The requirements of Article III standing are met, and Cedar Park must have access to the courts to protect its constitutional rights of free exercise of religion and religious autonomy. The panel's contrary decision and rationale were clearly wrong, and rehearing en banc is appropriate.

## ARGUMENT

Rehearing en banc, while not favored, is appropriate where:

(A) the panel decision conflicts with a decision of the court to which the petition is addressed and the full court's consideration is therefore necessary to secure or maintain uniformity of the court's decisions;

(B) the panel decision conflicts with a decision of the United States Supreme Court;

(C) the panel decision conflicts with an authoritative decision of another United States court of appeals; or

(D) the proceeding involves one or more questions of exceptional importance.

3

Fed. R. App. P. 40(b)(2). Here, several criteria for rehearing en banc are met.

## I. HOW ARTICLE III STANDING APPLIES IN THIS CASE IS A QUESTION OF EXCEPTIONAL IMPORTANCE.

Cedar Park's petition for rehearing en banc presents a question of exceptional importance: do religious organizations have Article III standing to challenge laws that force insurers to equate abortion with maternity care in employee health plans? The Free Exercise Clause of the First Amendment as applied to the states through the Fourteenth Amendment, provides that government "shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof*[.]" *Church of Lukumi Babalu Aye v. City of Hialeah ("Lukumi")*, 508 U.S. 520, 531 (1993) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021). The Supreme Court has repeatedly emphasized robust protection for religious exercise. *See, e.g. Lukumi*, 508 U.S. 520; *Fulton*, 593 U.S. 522.

To satisfy the "irreducible constitutional minimum" for standing to challenge laws that have an impact on religious freedom, a plaintiff must establish: (1) injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable decision. *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 746 (2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The panel's ruling—that Cedar Park lacked standing because its injury (inability to secure a health plan excluding

4

abortion services) wasn't directly traceable to the Act (and therefore not redressable)—sets a high bar for causation that could broadly limit religious entities' ability to challenge laws like the Act. This impacts not just Cedar Park but thousands of religious employers nationwide, especially in light of post-*Dobbs* abortion policy shifts. An en banc review could clarify whether the panel's narrow traceability and redressability standard undermines these precedents, particularly when a law predictably alters private insurers' behavior in ways that conflict with religious beliefs. Because this proceeding presents a question of exceptional importance, this Court should grant rehearing en banc.

**II. REHEARING EN BANC IS NECESSARY TO MAINTAIN JURISPRUDENTIAL UNIFORMITY.**

    **A. THE PANEL DECISION FAILED TO PROPERLY APPLY THE SUMMARY JUDGMENT STANDARD.**

It is a pillar of American jurisprudence that appellate courts "review the grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party." *See, e.g. Behrend v. San Francisco Zen Ctr., Inc.*, 108 F.4th 765, 768 (9th Cir. 2024) (citing *Edwards v. Wells Fargo & Co.*, 606 F.3d 555, 557 (9th Cir. 2010)); *Skyline*, 968 F.3d at 744 n.5 (citing *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 875 (9th Cir. 2016) (in evaluating an appeal from a decision granting a defendant's motion for summary judgment, we must view the record in the light most favorable to the plaintiff)).

5

The cases supporting this maxim are legion. Yet, inexplicably, the panel failed to draw reasonable inferences in Cedar Park's favor. The panel erred by requiring Cedar Park to prove—at the summary judgment stage—that the Act directly forced its insurer to drop abortion exclusions, rather than accepting reasonable inferences from the insurer's actions and statements. As the dissent noted, the panel simply disregarded real-world evidence:

> "Kaiser Permanente reasonably understood the plain language of [the Parity Act]" as prohibiting health plans that exclude abortion coverage, notwithstanding the existence of the conscience statute and November 2019 regulation. *Cedar Park I*, 860 Fed. App'x at 543. The best the majority can do is express disbelief as to why Kaiser Permanente does not provide Cedar Park a health plan excluding abortion, commenting that '[n]othing in the record explains" why Kaiser Permanente behaves this way, especially after the November 2019 regulation "made clear that the exception [Cedar Park] sought had existed all along." Apparently the November 2019 regulation was not as "clear" as the majority thinks.
>
> [. . .] Imagine for a moment that you are Kaiser Permanente's lawyer and told that a large church near Seattle wants to purchase a health plan that includes coverage for maternity care but excludes coverage for abortions. What do you say? Probably that you can't meet the church's needs. While the church is not required to purchase abortion coverage for its employee "benefits package," the "health plan" itself cannot exclude abortion coverage pursuant to the Parity Act.
>
> Guess what: this is exactly what Kaiser Permanente did when another religious employer, Seattle's Jesuit College Preparatory, sought a health plan that excluded abortions. Kaiser Permanente refused to provide it. The school then filed a complaint with the state's insurance commissioner, and the commissioner investigated Kaiser Permanente's decision. The insurance commissioner concluded that Kaiser Permanente was "compliant with state insurance laws" because it "made a decision to make sure all their group plans complied with the

6

> abortion mandate and they would not offer employers plans that excluded abortion."
>
> This strongly suggests that Kaiser Permanente is not making an "independent business decision" separate and apart from the Parity Act, as the majority would have you believe. "[V]iewing the evidence and drawing all reasonable inferences in the light most favorable to [Cedar Park]," *Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 914 (9th Cir. 2024), Kaiser Permanente refuses to provide Cedar Park a health plan that excludes abortion coverage due to the Parity Act notwithstanding the conscience statute's protections. The majority's conclusion to the contrary obtusely disregards Kaiser Permanente's real-world decision making and Cedar Park's continued inability to obtain a health plan that excludes abortion coverage.

*Cedar Park II*, 2025 U.S. App. LEXIS 5247, **39–41.

The dissent's observations more closely align with longstanding jurisprudence that standing hinges on a "substantial probability" of traceability, not absolute proof. *See Sierra Club v. EPA*, 292 F.3d 895, 899–901 (D.C. Cir. 2002) (under a summary judgment standard, a plaintiff must demonstrate each element of standing "by a substantial probability" and "may carry its burden of production by citing any record evidence relevant to its claim of standing […]"); *see also Lujan*, 504 U.S. at 561 (a plaintiff "must set forth by affidavit or other evidence specific facts" to support standing to survive a motion for summary judgment). The panel ignored Cedar Park's insurer's explicit link between the Act and its policy shift—evidence that satisfied the "substantial probability" standard and *Skyline*'s traceability standard, as discussed further below. Rehearing en banc is necessary to correct this error.

7

### B. THE PANEL'S TRACEABILITY ANALYSIS DIRECTLY CONTRADICTS *SKYLINE*.

The panel's decision conflicts with prior Ninth Circuit cases establishing standing where a plaintiff's injury stems from third-party responses to a challenged law. *See Skyline*, 968 F.3d 738. In *Skyline*, the Court held that a church had standing to challenge a contraception mandate because its insurer dropped a religiously compliant plan due to state pressure. In that case, the California Department of Managed Health Care ("DMHC") determined based on California constitutional and statutory provisions that legal abortion is a basic health care service that health insurers must cover. *Skyline*, 968 F.3d at 743–44. DMHC sent letters to insurers that offered plans with abortion restrictions stating the insurers must immediately remove the restrictions. *Id.* at 744. All insurers who received the letters complied, including Skyline's insurer. *Id.* at 744–45. Skyline was not able to obtain a plan consistent with its beliefs about abortion that it "is incompatible with the Bible's teachings about the sanctity of human life." *Id.* Skyline sued DMHC, alleging that the coverage requirement violated the Free Exercise Clause, Establishment Clause, and Equal Protection Clause. *Id.* at 745.

DMHC moved to dismiss for lack of standing. *Id.* The district court granted summary judgment, agreeing that Skyline lacked standing because, even though it had a cognizable injury that could be fairly traced to DMHC, any injury was not redressable because alleviating the injury would require action by a non-party

8

insurer in the form of furnishing Skyline with a plan containing the desired exemption. *Id.* at 746.

The Ninth Circuit reversed on appeal, holding that Skyline suffered an injury in fact. *Id.* at 747. The Court reasoned that before the letters were sent, Skyline had insurance that excluded abortion coverage in a way that was consistent with its religious beliefs; after the letters were sent, Skyline did not have that coverage, and presented evidence that its new coverage violated its religious beliefs. *Id.* "There is nothing hypothetical about the situation." *Id.* The Court expressly stated:

> Although we might have a fuller record in front of us if there had been a request for a Skyline-tailored exemption and a response to that request, *Article III does not require Skyline to have taken further steps before seeking redress in court for its injury*.

*Id.* (emphasis supplied). This is because, while a plaintiff must show that its "injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court,'" "[w]e do not, however, 'require the defendant's action to be the sole source of injury," and "[c]ausation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury." *Id.* at 748; *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)); *Wash. Envtl. Council v. Bellon*, 732 F.3d 1139, 1142 (9th Cir. 2013). Under this rationale, the Court found "a direct chain of causation from the DMHC's directive

9

requiring seven insurers to change their coverage, to Skyline's insurer's doing so, to Skyline's losing access to the type of coverage it wanted." *Id.*

This case is nearly identical. There is a direct chain of causation from the Act's directive requiring insurers to change their coverage, to Cedar Park's insurer's doing so, to Cedar Park losing access to the type of coverage it wanted. As such, the insurance commissioner's finding that Kaiser complied with the Act by standardizing abortion coverage, combined with Cedar Park's inability to find a comparable alternative, supports traceability. The panel's reliance on *Murthy v. Missouri*, 603 U.S. 43 (2024) (speculative third-party actions don't confer standing) is inapt because, far from that Act's effects being mere conjecture, the Act had a "predictable effect … on the decisions of third parties." *Murthy*, 603 U.S. at 72 (citing *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019); *Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)).

The dissent correctly categorized Cedar Park's position as a "catch-22: it either contracts with an insurer for a health plan that covers abortions (in violation of its religious belief) or it cancels its health plan (in violation of state and federal law)." *Cedar Park II*, 2025 U.S. App. LEXIS 5247, **53–54. This burden is fairly traceable to the Act. In failing to recognize this, the panel created confusion and inconsistency that should be rectified by rehearing en banc.

10

### C. THE PANEL'S REDRESSABILITY ANALYSIS FAILED TO APPLY ITS OWN PRECEDENT AND THAT OF OTHER CIRCUITS.

*Skyline* also supports finding that Cedar Park has met the redressability element of standing. To establish redressability, a plaintiff must show that "it is likely, as opposed to merely speculative, that [its] injury will be redressed by a favorable decision." *Skyline*, 968 F.3d at 749 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). It is not necessary to show "a guarantee that [the plaintiff's] injuries will be redressed." *Id.* (citing *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012) (quoting *Graham v. FEMA*, 149 F.3d 997, 1003 (9th Cir. 1998))).

In *Skyline*, the DMHC argued that a favorable decision would be unlikely to redress Skyline's injury because Skyline could not show that an insurer would likely agree to offer coverage consistent with Skyline's beliefs. *Id.* But the Court ultimately found this argument unpersuasive, recognizing that while it is true that redressability is lacking if the injury complained of is the result of "independent action of some third party not before the court," a plaintiff "does have standing when the defendant's actions produce injury through their 'determinative or coercive effect upon the action of someone else.'" *Id.* (quoting *Bennett*, 520 U.S. at 169 and *Lujan*, 504 U.S. at 560–61); *see also Dep't of Commerce*, 139 S. Ct. 2551, 2566 (explaining that standing is present when the theory of harm "does not rest on mere speculation

11

about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties").

The Court found that the action of issuing letters had a "determinative or coercive effect" on the seven insurers who received them—they predictably complied. *Id.* at 750 (citing *Bennett*, 520 U.S. at 169). The Court stated:

> The fact that insurers had previously offered plans that were acceptable to Skyline is strong evidence that, if a court were to order that the Coverage Requirement could not be applied to prevent approval of a health plan for Skyline that comports with Skyline's religious beliefs, at least one of the many insurers who do business in California would agree to offer the type of plan Skyline seeks.

*Id.* The Court acknowledged the possibility that "no insurer would do this" but affirmed that "we need not be certain how insurers would respond." *Id.* (citing *Renee*, 686 F.3d at 1013). Instead, the inquiry "is focused on whether the predictable effect of an order granting the relief Skyline seeks is that at least one insurer would be willing to sell it a plan that accords with its religious beliefs. We conclude that is the predictable effect." *Id.*

Under *Skyline's* rationale, the panel wrongly concluded that invalidating the Act wouldn't redress Cedar Park's injury, assuming its insurer might independently refuse abortion-free plans. But in *Skyline*, redressability was satisfied because a favorable ruling *could* restore prior insurance options—a precedent the panel sidestepped. The same is true here—insurers providing coverage in Washington *could* restore prior insurance options consistent with Cedar Park's beliefs.

12

Redressability doesn't require certainty. *Id.* (citing *Renee*, 686 F.3d at 1013). En banc review could correct this overly stringent interpretation, ensuring religious plaintiffs aren't barred from court due to hypothetical third-party intransigence.

Not only does the panel's redressability conclusion conflict with this Corut's own precedent, but also it conflicts with that of the Eighth Circuit. In *Wieland v. United States Dep't of Health & Human Services*, a member of the Missouri legislature and his spouse challenged provisions of the Affordable Care Act and implementing regulations that required certain insurers to cover contraceptive services. 793 F.3d 949, 952–53 (8th Cir. 2015). The plaintiffs claimed that these laws caused their state-provided group health care plan to include contraceptive coverage, and that this coverage—which they had previously been able to opt out of—violated their religious beliefs. *Id.* at 952–54. The Eighth Circuit held that the redressability requirement of standing was satisfied because, even though a court order enjoining the federal government from enforcing the challenged laws would not require the plaintiffs' state-provided health care plan to offer a contraceptive-free option, the fact that the plan had done so before the enactment of the challenged provisions was "persuasive evidence that [the plan] would do so again if the [plaintiffs were to] obtain their requested relief." *Id.* at 957.

So too here: we can infer from the insurer's previous practices that, if the Act were enjoined, Cedar Park could likely find a comparable health plan from an insurer

13

willing to offer it with the limitations it seeks on abortion coverage—as had been true before the Act took effect. The panel decision conflicts with this Court's own precedent and that of at least one other circuit. This is therefore one of the rare instances in which rehearing en banc should be granted.

## CONCLUSION

For these reasons, the Court should grant Cedar Park's petition for rehearing en banc.

DATED this 14th day of April 2025.

Respectfully submitted,

/s/ *Emily Jones*
Emily Jones
JONES LAW FIRM, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
(406) 384-7990
*emily@joneslawmt.com*

COUNSEL FOR *AMICUS CURIAE*

14

# **CERTIFICATE OF COMPLIANCE**

9th Cir. Case Numbers 23–35560 c/w 23–35585

I am the attorney or self-represented party.

This brief contains 3,286 words, including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief (select only one):

[ ] complies with the word limit of Cir. R. 32–1.
[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 23.1–1.
[**x**] is an amicus brief and complies with the word limit of Fed. R. Civ. P. 29(a)(5), Cir. R. 29–2(c)(2), or Cir. R. 29–2(c)(3).
[ ] is for a death penalty case and complies with the word limit of Cir. R. 32–4.
[ ] complies with the longer length limit permitted by Cir. R. 32–2(b) because (select only one):
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.
[ ] complies with the length limit designated by court order dated _____.
[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32–2(a).

DATED this 14th day of April 2025.

Respectfully submitted,

/s/ *Emily Jones*
Emily Jones
JONES LAW FIRM, PLLC
115 N. Broadway, Suite 410
Billings, MT 59101
(406) 384-7990
*emily@joneslawmt.com*

COUNSEL FOR *AMICUS CURIAE*

15