NOS. 23-35560, 23-35585

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,

*Plaintiff-Appellant / Cross-Appellee*,

v.

MYRON KREIDLER, in his official capacity as Insurance Commissioner for the State of Washington, AKA Mike Kreidler; JAY ROBERT INSLEE, in his official capacity as Governor of the State of Washington,

*Defendants-Appellees / Cross-Appellants*.

Appeal from the United States District Court
for the Western District of Washington at Tacoma

No. 3:19-cv-05181-BHS
The Honorable Benjamin H. Settle
United States District Judge, Presiding

## DEFENDANTS-APPELLEES' / CROSS-APPELLANTS' ANSWER TO
## PETITION FOR REHEARING EN BANC

NICHOLAS W. BROWN
*Attorney General*

TERA M. HEINTZ, WSBA 54921
*Assistant Attorney General*
MARTA DELEON, WSBA 35779
*Senior Assistant Attorney General*
PO Box 40100
Olympia, WA 98504-0100
Tera.Heintz@atg.wa.gov
Marta.DeLeon@atg.wa.gov

*Counsel for Defendants-Appellees / Cross-Appellants*

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................1

II.   STATEMENT OF THE CASE ........................................2

III.  ARGUMENT .....................................................................5

    A.  The Panel's Standing Analysis Comports with
       Controlling Precedent................................................5

       1.  The panel's injury-in-fact determination
          comports with controlling precedent ....................5

       2.  The panel's determination that Cedar Park
          failed to show causation or redressability
          comports with controlling precedent and
          creates no conflict .................................................8

    B.  The Panel's Rejection of Cedar Park's Law of
       the Case Argument Comports with Controlling
       Precedent and Creates No Conflicts.........................13

IV.  CONCLUSION................................................................15

# TABLE OF AUTHORITIES

## Cases

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ........................................................................ 7

*California v. U.S. Dep't of Health & Hum. Servs.*,
  941 F.3d 410 (9th Cir. 2019), *vacated on other grounds by
  Little Sisters of the Poor Jeanne Jugan Residence v. California*,
  141 S. Ct. 192 (2020) ................................................................... 10

*Cedar Park Assembly of God of Kirkland v. Kreidler* (*Cedar Park II*),
  130 F.4th 757 (9th Cir. 2025)................................................. passim

*Cedar Park Assembly of God v. Kreidler* (*Cedar Park I*),
  860 F. App'x 542 (9th Cir. 2021) (unpublished) ................................. passim

*D'Lil v. Best W. Encina Lodge & Suites*,
  538 F.3d 1031 (9th Cir. 2008)...................................................... 10

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ................................................................... 10

*Doremus v. Bd. of Educ. of Borough of Hawthorne*,
  342 U.S. 429 (1952) ..................................................................... 7

*Emp. Div. v. Smith*,
  494 U.S. 872 (1990) ..................................................................... 4

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................................. 7, 8, 14

*Jones v. L.A. Cent. Plaza LLC*,
  74 F.4th 1053 (9th Cir. 2023)....................................................... 15

*Korte v. Sebelius*,
  735 F.3d 654 (7th Cir. 2013)........................................................ 12

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) .......................................................................... 7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................. 11, 13

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) ........................................................ 11

*Murthy v. Missouri*,
   144 S. Ct. 1972 (2024) ....................................................... passim

*Nordstrom v. Ryan*,
   856 F.3d 1265 (9th Cir. 2017) ................................................. 13, 14

*Priests For Life v. U.S. Dep't of Health & Hum. Servs.*,
   772 F.3d 229 (D.C. Cir. 2014), *vacated on other grounds by*
   *Zubik v. Burwell*,
   578 U.S. 403 ................................................................................... 12

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
   968 F.3d 738 (9th Cir. 2020) ..................................................... 6, 11

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .......................................................................... 6

*United States v. Lewis*,
   611 F.3d 1172 (9th Cir. 2010) ................................................. 14, 15

*Utah v. Evans*,
   536 U.S. 452 (2002) ........................................................................ 12

*Uzuegbunam v. Preczewski*,
   592 U.S. 279 (2021) ........................................................................ 12

*Wieland v. U.S. Dep't of Health & Hum. Servs.*,
   793 F.3d 949 (8th Cir. 2015) .......................................................... 12

*Zubik v. Burwell*,
  578 U.S. 403 (2016) (per curiam) ................................................................. 7

## Constitutional Provisions

U.S. Const. amend. I ...................................................................................... 3

U.S. Const. art. III ........................................................................................ 1

## Statutes

Substitute S.B. 6219, 65th Leg., Reg. Sess. (Wash. 2018)........................ passim

Wash. Rev. Code § 48.43.065(2)(b) ................................................................ 3

Wash. Rev. Code § 48.43.065(3)(a) ........................................................... 1, 2, 3

Wash. Rev. Code § 48.43.073(1)(a) ............................................................ 1, 3

## Regulations

Wash. Admin. Code § 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(3) ......................................................... 1, 4

## Rules

Fed. R. App. P. 40........................................................................................ 5

## I.    INTRODUCTION

For 30 years, Washington's conscientious-objection law has provided that "[n]o individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion." Wash. Rev. Code § 48.43.065(3)(a). Against this legal backdrop, Washington enacted Substitute Senate Bill 6219, 65th Leg., Reg. Sess. (Wash. 2018), in 2018, which requires health insurers—not employers—that provide maternity coverage to provide "substantially equivalent coverage to permit the abortion of a pregnancy." Wash. Rev. Code § 48.43.073(1)(a). SSB 6219 requires nothing from Cedar Park. It does not require Cedar Park to pay for or provide abortion coverage or even provide information to its employees about such coverage. Thus, Cedar Park's continued assertion that SSB 6219 has forced Cedar Park "to include abortion and abortifacient-contraceptive coverage in its employee health plan for over five years" is simply false as a matter of law. Dkt Entry 113 at 7. Indeed, after SSB 6219's enactment, Washington's Insurance Commissioner adopted regulations making clear that SSB 6219 "does not diminish or affect any rights" provided under Washington's conscientious-objection statute. Wash. Admin. Code § 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(3). And acting consistently with that regulation, the Insurance Commissioner has approved several group health plans since SSB 6219's enactment that exclude abortion coverage.

Given the existing and confirmed protections for Cedar Park's religious beliefs, the panel in this case properly determined that Cedar Park lacked Article III standing to challenge SSB 6219. Contrary to Cedar Park's arguments, the panel assumed without deciding that Cedar Park had demonstrated injury-in-

1

fact when, shortly after SSB 6219's enactment, Cedar Park's insurer stopped offering an insurance plan excluding abortion coverage. But the panel properly found that Cedar Park could not demonstrate causation because it had failed to proffer any evidence that, at the time of summary judgment, any non-party insurer refused to provide Cedar Park with an abortion-excluding plan due to SSB 6219. Nor could Cedar Park prove redressability because it failed to proffer any evidence that enjoining SSB 6219 would likely cause insurers to provide Cedar Park an abortion-excluding plan in the future.

The panel's decision fully comports with controlling Supreme Court precedent and this Circuit's case law. Cedar Park's arguments to the contrary rest entirely on mischaracterizations of Washington law, the panel's decision, and the record evidence. In short, Cedar Park has no one to blame but itself for its deficient record on standing. It inexplicably failed to conduct discovery of any insurer during the five-year pendency of this litigation and instead relied solely on its initial allegations in its complaint to prove standing. The panel's routine determination that such unproven allegations did not suffice to meet Cedar Park's summary judgment burden does not meet the high bar for en banc review. Cedar Park's petition for rehearing en banc should be denied.

## II. STATEMENT OF THE CASE

In 1995, Washington's Legislature passed a conscience-objection law providing that "[n]o individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion." Wash. Rev. Code § 48.43.065(3)(a). The conscience-objection statute frees insurance companies to offer health plans that accommodate employers'

religious or moral objections. Wash. Rev. Code § 48.43.065(3)(a). For any such plan, Washington requires insurance carriers—not employers—to ensure that objecting organizations do not pay for such services, and for insurers to provide information to enrollees about how to access coverage for such services. Wash. Rev. Code § 48.43.065(2)(b).

In 2018, Washington enacted Substitute Senate Bill 6219. SSB 6219 requires insurers that offer health plans providing maternity coverage to also provide "substantially equivalent coverage to permit the abortion of a pregnancy." Wash. Rev. Code § 48.43.073(1)(a).

Shortly after its enactment, Cedar Park filed a lawsuit against Washington's Insurance Commissioner, alleging that Cedar Park's insurer, Kaiser-Permanente, canceled a policy that excluded coverage for abortion. The district court dismissed Cedar Park's claims for lack of standing because SSB 6219 did not prevent Kaiser from continuing to offer a plan that excluded abortion coverage. *Cedar Park Assembly of God v. Kreidler* (*Cedar Park I*), 860 F. App'x 542, 543 (9th Cir. 2021) (unpublished). This Court affirmed in part and reversed in part. On the issue of standing to assert its Free Exercise claim, this Court held that Cedar Park "plausibly alleged that, due to the enactment of SB 6219, its health insurer (Kaiser Permanente) stopped offering a plan with abortion coverage restrictions and Cedar Park could not procure comparable replacement coverage." *Id.* That sufficed at the pleading stage to allege "injury in fact that is fairly traceable to SB 6219" and that could be redressed in the litigation. *Id.*

After SSB 6219's enactment, Washington's Insurance Commissioner adopted regulations in 2019 making clear that SSB 6219 "does not diminish

or affect any rights" under Washington's conscientious-objection statute. Wash. Admin. Code § 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(3). The Insurance Commissioner has since approved several group health plans that exclude abortion coverage, including abortion-excluding plans offered by both secular and religious insurance carriers. 2-ER-172–77; 2-ER-182.

After discovery, the district court granted summary judgment and dismissed Cedar Park's Free Exercise claims on the merits, finding that SSB 6219 was a neutral and generally applicable law under *Employment Division v. Smith*, 494 U.S. 872 (1990), and rationally related to the State's legitimate policy goals. 1-ER-12–26. This Court affirmed the dismissal of Cedar Park's claims on standing grounds. *Cedar Park Assembly of God of Kirkland v. Kreidler* (*Cedar Park II*), 130 F.4th 757, 765 (9th Cir. 2025). It assumed without deciding that Cedar Park was injured-in-fact by the cancellation of its Kaiser insurance policy shortly after passage of SSB 6219. *Id.* at 764-65. But it determined that Cedar Park failed to demonstrate causation or redressability. Specifically, on causation, it held that "[n]othing in the challenged law prevents any insurance company, including Kaiser, from offering Plaintiff a health plan that excludes direct coverage for abortion services. Therefore, an insurance company's independent business decision not to offer such a plan is not traceable to [SB 6219]." *Id.* at 765 (footnotes omitted). On redressability, the panel held that enjoining enforcement of SSB 6219 would not redress Cedar Park's injuries because, "[f]ar from demonstrating that Defendants pressure insurers to refuse to offer no-abortion plans, the record shows the opposite. Washington's statutes and implementing regulation enable insurance carriers to provide exactly the sort of coverage that Plaintiff requires." *Id.* at 765-66.

4

### III.   ARGUMENT

**A.   The Panel's Standing Analysis Comports with Controlling Precedent**

Cedar Park cannot meet the demanding standard for en banc review under Fed. R. App. P. 40. Contrary to Cedar Park's bald assertions, Washington law does not prevent any insurer from offering an insurance policy to Cedar Park that excludes abortion coverage. While Cedar Park's insurer, Kaiser, may have misinterpreted the requirements of SSB 6219 when the law first passed, Cedar Park has not shown that SSB 6219 is the reason Cedar Park has not obtained an abortion-excluding policy in the years since this case has been pending. And Cedar Park has no one to blame but itself for this failure of proof as it never even bothered to take discovery from Kaiser or any other insurer.

Because the panel appropriately determined that Washington law does not prevent insurers from offering Cedar Park an abortion-excluding plan, Cedar Park cannot trace its injuries to SSB 6219 or show that enjoining SSB 6219 would redress its injuries by causing non-party insurers to offer an abortion-excluding plan in the future. The panel's case-specific determination is consistent with controlling case law and does not remotely involve a question of exceptional importance. Fed. R. App. P. 40. Cedar Park's en banc petition should be denied.

> **1.   The panel's injury-in-fact determination comports with controlling precedent**

Cedar Park's challenge to the panel's injury-in-fact decision makes little sense. Cedar Park argues that loss of its Kaiser insurance policy shortly after passage of SSB 6219 constitutes injury-in-fact under this Circuit's precedent. But the panel assumed without deciding that Cedar Park had sufficiently

demonstrated injury-in-fact based on the loss of that policy. *Cedar Park II*, 130 F.4th 764-65. En banc review of this issue cannot impact the outcome here.

In any event, the panel also properly rejected Cedar Park's alternative theory of injury: that SSB 6219 caused Cedar Park to "indirectly facilitate" abortion coverage because the law requires *insurers* to provide coverage for objected-to services. At the outset, nothing in the cases Cedar Park cites— *Skyline Wesleyan Church v. California Department of Managed Health Care*, 968 F.3d 738 (9th Cir. 2020); *Cedar Park I*, 860 F. App'x at 542; or *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)—precludes consideration of a party's alternative theory of injury, as Cedar Park argues here.

Moreover, the panel properly rejected Cedar Park's theory of indirect facilitation as lacking any evidence and conflicting with controlling law. Recognizing that Washington's conscience-objection law prohibits insurance companies from charging Cedar Park directly for objected-to services, Cedar Park argued to the district court that SSB 6219 would cause Cedar Park to "indirectly facilitate" abortion coverage *if* Cedar Park employees sought coverage for objected-to services and *if* insurers responded by increasing Cedar Park's costs through, for example, increasing its overhead fees. *Cedar Park II*, 130 F.4th at 768-69. But Cedar Park never proved this theory of injury. It submitted *no* evidence showing either that (1) its employees would seek objected-to services; or that (2) insurers would charge Cedar Park indirectly for such services. *Id.* The panel thus rightly concluded Cedar Park's indirect facilitation argument was "premised <u>entirely</u> on speculation[,]" and that "no evidence in the record that Plaintiff has incurred such costs or is likely to do so

in the future." *Id.* at 768. Cedar Park's claims of conflicts with Circuit precedent are based entirely on mischaracterizations of the record.

The panel's rejection of Cedar Park's indirect facilitation theory also fully comports with Supreme Court and Ninth Circuit law. As the Supreme Court recently recognized in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 374 (2024), Cedar Park's desire to make abortion "less available *for others* does not establish standing to sue." In *Alliance*, as here, plaintiffs had "sincere legal, moral, ideological, and policy objections" to the provision of abortion medications, but these sincere religious beliefs alone were insufficient to establish standing to sue "simply because *others* are allowed to engage in certain activities[.]" *Id.* at 386, 393. The same holds true here. There is nothing remarkable about the panel's conclusion that Cedar Park's relationship to the coverage of objected-to services is simply too attenuated to provide standing.[1] *See also Doremus v. Bd. of Educ. of Borough of Hawthorne*, 342 U.S. 429 (1952) (holding that status as taxpayer insufficiently direct to support standing).

And contrary to Cedar Park's argument, nothing in the panel's decision conflicts with *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020), *Zubik v. Burwell*, 578 U.S. 403 (2016) (per curiam), or *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). In those cases, the plaintiffs challenged provisions of the Affordable Care Act that directly required religious employers to provide contraceptive coverage or

---

[1] While Cedar Park argues that, in reaching this conclusion, the panel questioned the sincerity of its beliefs, that is rank mischaracterization. The panel explicitly acknowledged it had "no reason to doubt" the sincerity of Cedar Park's religious beliefs, but that it still bore the burden of proving its claimed injury, which it simply failed to do. *Cedar Park II*, 130 F.4th at 769.

face monetary penalties. But demonstrating standing in such cases is easy. As recognized in *Alliance*, "[g]overnment regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." 602 U.S. at 382. Here, in contrast, SSB 6219 does not require or forbid any action by Cedar Park. As in *Alliance*, the panel properly concluded that Cedar Park had not demonstrated injury beyond the loss of its Kaiser policy.

### 2. The panel's determination that Cedar Park failed to show causation or redressability comports with controlling precedent and creates no conflict

The panel also properly applied controlling precedent, *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024), to reject Cedar Park's arguments for causation and redressability. In *Murthy*, the Court held that social media users lacked standing to challenge the federal government's alleged pressuring of social media platforms about their content moderation policies because, even assuming that the federal government had pressured the platforms to censor plaintiffs' speech at the time of plaintiffs' complaint, plaintiffs failed to proffer evidence that the federal government continued to exert such pressure, or that enjoining the federal government would cause the non-party social media platforms to allow plaintiffs' speech. *Id.* at 1988-89. The Court emphasized that when plaintiffs seek "forward-looking relief," as Cedar Park sought here, "past injuries are relevant only for their predictive value." *Id.* at 1987. To demonstrate standing for such forward-looking relief, "plaintiffs must proffer evidence that the defendants' 'allegedly wrongful behavior w[ould] *likely* occur or continue'" and that "without proof of . . . ongoing" wrongful conduct, it was "entirely speculative" that any future decision by the non-parties "will be attributable,

even in part, to the defendants." *Id.* at 1993 (alteration in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

The panel here properly concluded that Cedar Park failed to establish causation and redressability for the exact same reasons. Because Washington law does not bar insurers from offering policies excluding abortion coverage, and the Insurance Commissioner even approved insurance plans excluding such coverage after passage of SSB 6219, Cedar Park could not trace its failure to obtain such a plan to SSB 6219, as opposed to the independent actions of non-party insurers. Nor could Cedar Park demonstrate that enjoining SSB 6219 would cause insurers to offer Cedar Park a policy excluding abortion coverage in the future as required to demonstrate redressability.

Cedar Park grossly mischaracterizes the record in arguing it demonstrated an actual inability to obtain an abortion-excluding plan. Cedar Park points only to Kaiser's decision not to offer an abortion-excluding policy before Cedar Park filed its complaint. But after the Insurance Commissioner passed a regulation making clear that SSB 6219 did not diminish any rights under Washington's conscience-objection statute and even approved other insurance plans excluding abortion coverage, this prior decision by Kaiser had no predictive value. It certainly could not demonstrate that SSB 6219 posed a barrier to Kaiser or any other insurer offering an abortion-excluding plan. Nor could it show that any insurer would offer Cedar Park an abortion-excluding plan if SSB 6219 were enjoined. And because Cedar Park simply chose not to seek discovery from Kaiser (or any other insurer), this "gap in the record is a result of Plaintiff's own inaction." *Cedar Park II*, 139 F.4th at 765 n.9.

9

Cedar Park is also wrong when it asserts, with virtually no analysis, that the panel's decision on causation and redressability conflicts with various Supreme Court and Ninth Circuit cases. It does not. At the outset, each of the cases cited by Cedar Park predate the Supreme Court's more specific ruling in *Murthy*. Moreover, the cases cited by Cedar Park are plainly distinguishable. For example, in *Department of Commerce*, unlike here, plaintiffs produced evidence that their injury would likely recur based on the federal government's own prediction that adding a citizenship question to the census questionnaire would decrease census responsiveness by non-citizen households. *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). Similarly, in *California v. U.S. Department of Health & Human Services*, 941 F.3d 410, 421 (9th Cir. 2019), *vacated on other grounds by Little Sisters of the Poor Jeanne Jugan Residence v. California*, 141 S. Ct. 192 (2020), the court found standing based on the "federal government's *own* prediction about the decisions of third parties."

Here, in contrast, Cedar Park failed to produce any evidence connecting Kaiser's decision in 2018 not to offer an abortion-excluding policy with any recurring or future injury to Cedar Park traceable to SSB 6219. Instead, Cedar Park steadfastly maintained that any evidence and events after it filed its complaint were "irrelevant" to standing, in direct conflict with *Murthy* and this Circuit's precedent. For example, Cedar Park cites *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008), but that case directly rejects Cedar Park's argument, holding that to show standing in a "suit for injunctive relief," plaintiff must demonstrate "'a sufficient likelihood that he will again be wronged in a similar way. . . .' That is, he must establish a 'real and immediate threat of repeated injury.'" *Id.* at 1036 (alteration in original) (quoting *Fortyune*

*v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004)). Cedar Park simply failed to meet its burden here.

The panel also appropriately rejected Cedar Park's claims of a conflict with *Skyline* and *Cedar Park I*. In *Skyline*, unlike here, "a governmental agency issued a directive requiring seven insurers to remove restrictions on abortion services from their health plans." *Cedar Park II*, 130 F.4th at 766 (citing *Skyline*, 968 F.3d at 748-50). After each provider complied, the plaintiff lost its plan through the State's "determinative or coercive effect upon the action of someone else," demonstrating causation. *Skyline*, 968 F.3d at 750. And given the insurers' pre-directive practices, the plaintiff in *Skyline* showed that "the predictable effect of an order granting the relief Skyline seeks is that at least one insurer would be willing to sell it a plan that accords with its religious beliefs." *Cedar Park II*, 130 F.4th at 766 (citing *Skyline*, 968 F.3d at 750)*.* The record in this case, however, is nothing like *Skyline*. Instead, "far from demonstrating that Defendants have ever ordered any insurance carrier, including Kaiser, to cease the sale of abortion-excluding plans," the record here shows that "Defendants have approved such plans." *Id.* at 766. *Skyline* has no application here.

*Cedar Park I* is likewise inapplicable. While this Court previously held that the loss of an abortion-excluding Kaiser policy was sufficient to "allege" standing in its complaint, Cedar Park cannot continue to rely on these bare allegations to demonstrate causation and redressability for prospective injunctive relief at summary judgment. As detailed below, the law has long been settled that the plaintiff bears a higher burden to demonstrate standing at summary judgment. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And contrary to Cedar Park's reliance on *Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014), the

11

problem here was not the existence of links in its alleged chain of causation: it is the complete lack of evidence supporting those links.

Cedar Park's argument that the panel's decision conflicts with other Supreme Court cases similarly falls short. In *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021), unlike here, the plaintiffs did not seek prospective injunctive relief because the defendants had already changed their challenged policies. Its discussion on redressability and causation thus do not apply. And in *Utah v. Evans*, 536 U.S. 452, 463 (2002), the Court concluded that plaintiff's victory "would bring about the ultimate relief" sought by the plaintiff. Here, in contrast, Cedar Park sought relief the Court could not grant: to purchase an insurance policy excluding abortion coverage from a non-party insurer, without any showing that any insurer was likely to provide such a policy if the Court enjoined SSB 6219's application to Cedar Park.

Finally, the panel here appropriately rejected Cedar Park's arguments of a conflict among Circuits. The panel appropriately distinguished the cases cited by Cedar Park: *Wieland v. U.S. Dep't of Health & Hum. Servs.*, 793 F.3d 949 (8th Cir. 2015); *Priests For Life v. U.S. Dep't of Health & Hum. Servs.*, 772 F.3d 229 (D.C. Cir. 2014), *vacated on other grounds by Zubik*, 578 U.S. 403; and *Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013). All of these cases involved the Affordable Care Act's requirement that *employers* cover contraceptives. As regulated parties subject to punishment for noncompliance, the plaintiffs readily met standing requirements. Here, in contrast, "Washington law does not require abortion coverage" by any employer, let alone by Cedar Park. *Cedar Park II*, 130 F.4th at 767 n.13. These cases have no application here.

The panel followed controlling Supreme Court and Circuit precedent in holding that Cedar Park failed to demonstrate causation and redressability. The panel's fact-bound determination does not warrant en banc review.

**B.     The Panel's Rejection of Cedar Park's Law of the Case Argument Comports with Controlling Precedent and Creates No Conflicts**

The panel also properly rejected Cedar Park's argument that the law of the case doctrine precluded this Court's consideration of Cedar Park's standing at summary judgment. The panel properly noted that law of the case applies only when a case returns on appeal "in virtually the same procedural posture[.]" *Nordstrom v. Ryan*, 856 F.3d 1265, 1270 (9th Cir. 2017). In finding that this case returned to this Court in a different procedural posture than in *Cedar Park I*, the panel cited *Murthy* and settled law since *Lujan*, that once parties have taken discovery, the plaintiff "cannot rest on 'mere allegations,' but must instead point to factual evidence" to support standing. *Murthy*, 144 S. Ct. 1972, 1986 (quoting *Lujan*, 504 U.S. at 561). The panel also followed settled Circuit precedent distinguishing the pleading stage from summary judgment stage. "At the pleading stage, a plaintiff need only 'allege sufficient facts that, taken as true, "demonstrat[e] each element of Article III standing." ' " *Cedar Park II*, 130 F.4th at 763 (alteration in original) (quoting *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023)). But "[s]ummary judgment presents a higher hurdle," requiring a plaintiff to " ' "offer evidence and specific facts [that demonstrate] each element" of Article III standing.' " *Id.* at 763 (alteration in original) (quoting *Jones*, 74 F.4th at 1058) (Article III standing requirements " 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, <u>i.e.</u>, with the manner and degree of evidence required at the successive stages of the litigation.' " (quoting *Jones*, 74 F.4th 1057); *Ctr.*

*for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, 894 F.3d 1005, 1012 (9th Cir. 2018)). The panel properly determined that *Cedar Park I* did not determine Cedar Park's standing burden at summary judgment.

Cedar Park is also wrong that the panel's decision conflicts with *Nordstrom*, 856 F.3d 1265, or *United States v. Lewis*, 611 F.3d 1172 (9th Cir. 2010). To start, both cases predate *Murthy* and *Alliance*, which the panel properly applied here. Moreover, unlike here, the relevant appeals in both *Nordstrom* and *Lewis* arose in "virtually the same procedural posture as . . . the prior [appeals.]" *Nordstrom*, 856 F.3d at 1270. In *Nordstrom*, this Court held, as a matter of law, that a policy permitting prison officials to scan legal documents "interfered with attorney-client communications related to the appeal of [Nordstrom's] murder conviction and death sentence . . . [and fell] squarely within the scope of the Sixth Amendment right to counsel." *Id.* at 1269 (first and second alteration in original). On remand, the district court did not reassess standing, but instead adopted the same argument that Cedar Park makes here, that "for standing analysis, the key point in time is the filing of the complaint." *Id.* at 1270 (citation omitted). This Court found the district court "erred by failing to consider whether Nordstrom has standing *now*, and not merely at the time of the complaint." *Id.* But because the second appeal raised the same legal question, based on the same undisputed prison policy raised in the prior appeal, the Court found it was bound by law of the case. *Id.* at 1270-71.

Similarly, in *Lewis*, this Court determined that specific periods of pre-trial delay were not excludable from assessing a violation of the Speedy Trial Act. When the case returned to this Court in a later appeal, raising the same legal issue as the first appeal, the Court held that it was bound by its prior legal

determination that specific time periods were not excludable. *Lewis*, 611 F.3d at 1175.

This case, in contrast, returned to this Court in a different procedural posture and raised different facts and evidence not at issue in the motion to dismiss, requiring Cedar Park to proffer evidence—not just bare allegations—supporting its claims of injury-in-fact, causation, and redressability. *Jones*, 74 F.4th at 1057-58. This Court's *Cedar Park I* decision that Cedar Park "plausibly alleged" facts in its complaint supporting standing says nothing about whether Cedar Park met its burden on summary judgment to seek injunctive relief. Because the panel correctly determined Cedar Park failed to meet its burden, its petition should be denied.

## IV.   CONCLUSION

For the foregoing reasons, this Court should deny Cedar Park's petition for en banc review.

RESPECTFULLY SUBMITTED this 29th day of April, 2025.

NICHOLAS W. BROWN
*Attorney General*

*s/Tera M. Heintz*
TERA M. HEINTZ, WSBA 54921
*Assistant Attorney General*
MARTA DELEON, WSBA 35779
*Senior Assistant Attorney General*
PO Box 40100
1125 Washington Street SE
Olympia, WA  98504-0100
Tera.Heintz@atg.wa.gov
Marta.DeLeon@atg.wa.gov
*Attorneys for Defendants-Appellees*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** No. 23-35560; No. 23-35585

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

◯ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** _____ .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

◉ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/Tera Heintz          **Date** 4/29/2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11**                                        *Rev. 12/01/24*